JASPER T. PENDLETON, RECEIVER, ETC., *v.* MIKE LUTZ.

1. REMOVAL OF CAUSES TO FEDERAL COURT. *Receivers.*

   Where a suit involving less than two thousand dollars is instituted
   in a state court against a nonresident corporation, and afterwards.
   the corporation is placed in the hands of a receiver by a federal
   court in the state of its domicile. the suit in the state court is not.
   removable to a federal court on the application of the receiver.

2. SAME. *Act of congress, March* 3, 1875, *as amended* 1887, *re-enacted* 1888.
   *Suits against federal receivers.*

   Under the third section of the act of congress, approved March 3,.
   1875, amended March 3, 1887, re-enacted August 12, 1888 [25 U. S.
   Statutes at Large, 433, supplement to Revised Statutes of U. S.,
   vol. 1 (2d ed.), 611], a suit against a federal receiver is an inde-
   pendent suit, is not ancillary to the cause in which the receiver
   was appointed, and the last clause of the section does not continue
   the right of removal as it existed before the passage of the act.

FROM the chancery court of Lauderdale county.

HON. NATHAN C. HILL, Chancellor.

Lutz, the appellee, was the complainant in the court below;.
the original defendant there was the Southern Home Building
& Loan Association of Georgia, a corporation of that state.
Some time after the beginning of the suit the building and loan
association was placed in the hands of a receiver, by order of a.
federal court in the state of Georgia, in which state the associ-
ation was domiciled.. The appellant, Pendleton, was made the·
receiver, and made application to the chancery court of Lauder-
dale county for the removal of this cause to the federal court.
at Meridian, in this state. The court below overruled the ap-
plication, and thereafter rendered a final decree in complainant's.
favor. The receiver appealed to the supreme court. The sec-
tion of the act of congress construed is copied in the opinion of:
the court.

*W. A.* *Wimbish* and *Cochran & Bozeman*, for appellant.

The cause was properly removable to the federal court upon the facts stated in the petition. *White* v. *Ewing*, 159 U. S., 36; 1 Desty's Fed. Proc. (9th ed.), p. 446, sec. 96, citing 82 Fed., 790; 73 Fed., 311; 61 Fed., 417; 81 Fed., 886 and 881; 75 Fed., 849; 82 Fed., 241; 69 Fed., 417.

The action of the federal court in seizing all of the assets of the defendant association, by its receivers, deprived the association of all means of either prosecuting or defending suits. In view of this fact, and in conformity with the doctrine announced in *White* v. *Ewing*, 159 U. S., 36 (40 L. Ed., 67), and cases there cited, the court granted an order enjoining all shareholders from proceedings against the association excepting by intervention. The court having rendered the association helpless, and having undertaken to wind up its affairs and administer all its assets, it became necessary to grant the injunction and to assume exclusive jurisdiction. All suits for and against the association became ancillary to the main cause. In *White* v. *Ewing*, *supra*, the court, speaking through Mr. Justice Brown, says that the appointment of receivers for an insolvent corporation by the United States circuit court draws to the jurisdiction of that court all controversies affecting the administration of the affairs of the corporation, whether for the collection of its assets or for the defense of its property rights, and that such suits must be regarded as ancillary to the main suit, and are cognizable in the circuit court, regardless of the citizenship of the parties or the amount in controvery.

Under the injunction granted, and under the rule of law declared, a cause pending in the state court cannot proceed, but the rights of the parties must be adjusted in the main cause in the general administration of the estate. The appointment of a receiver to administer the estate and wind up the affairs of the defendant association constitutes such a dissolution of the corporation as to abate all suits pending for or against it in the state courts.

(*a*) That the dissolution of the corporation abates all pending actions for and against it in the sense of a saving statute, is familiar law.    5 Thompson on Corp., sec. 5225; 7 Thompson on Corp., sec. 8793; *Pendleton* v. *Russell*, 144 U. S., 640 (L. Ed., 574).    Not only does the dissolution of the corporation abate pending actions, but all attachments against the property are likewise dissolved.    *Wilcox* v. *Ins. Co.*, 56 Conn., 468.

(*b*) It is freely conceded that the mere appointment of a receiver does not effect the dissolution of an ordinary corporation.    It may adjust its difficulties and resume its ordinary business.    Such, however, is not the case with building associations.    The appointment of a receiver under a winding up bill is fatal.    The failure of the plan of the association, the appointment of a receiver to wind up its affairs, and the withdrawal of an integral portion of the membership, taking their money with them, and crippling the association so as to make its future successful operation impossible, are each treated as a practical and virtual dissolution of it, because putting an end to the business of the society as a building association.    2 Thompson on Corp., sec. 8791; Endlich on Building Asso. (2d ed.), secs. 508, 522.

(*c*) A practical and virtual dissolution renders the association incapable of prosecuting pending suits.    The converse of this proposition must be equally true.    *Van Pelt* v. *B. & L. Asso.*, 87 Ga., 270; *Cooper* v. *Building Asso.*, 100 Pa. St., 402.

In such cases the liabilities of members for dues, fines, and premiums ceases, and the obligations of the borrowers are matured.    7 Thompson on Corp., sec. 8796; *Towles* v. *B. L. & I. Co.*, 61 Fed. Rep., 446.

The test of the dissolution of a corporation for all purposes is to consider whether it has lost its capacity to sustain itself by a new election of officers.    Such a dissolution, in the language of Lord Mansfield, is not a forfeiture for nonuser, but is a consequence of law.    "The corporation is dead, not barely

asleep." 5 Thompson on Crop., secs. 6579-6658; *Phillips* v. *Wickham*, 1 Paige (N. Y.), 590. Applying these principles of law and this test to the defendant association, we find that its corporate existence has come to an end, except for the purpose of the administration of its affairs in the federal court. The association has no outside creditors, nor has it any obligations excepting to its own members. The winding up of its affairs necessarily implies that all of its assets shall be distributed to all of its members, so that nothing remains of the corporation. It would be both legally and actually impossible for it to adjust its obligations with its members, for the settlement between the association and its members *ipso facto* terminates the relation of membership. It follows that the complete extinction of the corporate existence of the association is inevitable; there is no way by which to avoid it.

In the case of *Miles* v. *New South B. & L. Association*, 95 Fed., 919, Judge Shelby says: "In litigation involving the receivership and settlement of insolvent corporations, it is desirable that the procedure be concentrated in one case so far as practicable." 5 Thompson on Corp., sec. 6697; *Bank* v. *Rockbridge Co.*, 73 Fed., 709; *Temple* v. *Glasgow*, 80 Fed., 441.

*G. Q. Hall & Son*, for appellee.

The chancery court acquired jurisdiction of this cause October 26, 1899. A receiver was appointed by the federal court of Georgia April 3, 1900. The order appointing said receiver also enjoined all proceedings against the Southern Home Building & Loan Association. Can the United States court thus oust the jurisdiction of the state court first acquired? It is well settled, as a general rule, that where two courts have concurrent jurisdiction whichever court first acquired jurisdiction will retain it throughout. 12 Am. & Eng. Enc. L., 293.

The power of federal courts to interfere by injunction with actions pending in the state courts was at an early period in the history of the nation limited and defined by legislation. The

judiciary act of 1793 prohibited in express terms the granting of injunctions to stay proceedings in any court of a state. This prohibition has been embodied in the revised statutes of the United States in the following provision: "The writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a state, except in cases where such injunction may be authorized by law relating to proceedings in bankruptcy." 1 High on Injunctions, 89, sec. 109.

The courts of the United States have no jurisdiction to interfere by injunction with the possession or control of property which is in possession of a state court having jurisdiction over the matter. 1 High on Injunctions, sec. 109. There is a diversity of citizenship here, but the jurisdictional amount of a federal court is wanting, the amount in controversy being $1,098.32. Therefore, excluding the federal receivership, for the sake of argument, this cause could not have been removed to the United States court. The receiver, who was not made a party to this suit, cannot become such without our consent. *Whitney* v. *Hanover National Bank*, 71 Miss., 1009.

Argued orally by *G. Q. Hall*, for appellee.

Whitfield, C. J., delivered the opinion of the court.

In this case the plaintiff brought his suit by an attachment in chancery, and by proper process, duly served, the court acquired actual possession of the property attached. All this was done before the corporation became insolvent and receivers were appointed by the federal court at Atlanta, Ga. Some months after the institution of the suit, receivers appointed by the federal court appeared and asked to remove the case to the federal court in the proper district in Mississippi, at Meridian. This motion the court denied. That is the chief error assigned. The authorities relied on by appellant are *White* v. *Ewing*, 159 U. S., 36, s. c. 15 Sup. Ct., 1018, 40 L. Ed., 67, and certain authorities set out at page 446, 1 Desty, Fed. Proc., the last

authorities being decisions of judges of inferior federal courts, but all of them relating to suits against receivers. In this case the matter in dispute is less than $2,000. This is not a suit against a receiver at all, and all of these authorities are inapplicable. *White* v. *Ewing*, 159 U. S., 36, s.c. 40 L. Ed. 67, was not a removal case, since the state court acquired jurisdiction and actual possession of the property by attachment long before the federal court appointed receivers. As the amount in dispute is less than $2,000, it is clear that the action of the court below was correct. This is made perfectly plain by the following authorities: *Gilmore* v. *Herrick* (C. C.), 93 Fed., 525 (a masterly opinion by Judge Taft); *Ray* v. *Peirce* (C. C.), 81 Fed., 881; *Bank* v. *Calhoon*, 102 U. S., 256, s.c. 26 L. Ed., 101; *Compton* v. *Jesup*, 15 C. C. A., 397, s.c. 68 Fed., 263. Even were this a suit against a receiver appointed by the federal court prior to the bringing of this suit, since the amount involved is less than $2,000 the case would still not be removable under the act of March 3, 1875, amended by the act of March 3, 1887, as re-enacted by the act of August 13, 1888 (25 Stat., 433). See the authorities just cited, which are conclusive.

There is a case (*Carpenter* v. *Railroad Co.* [C. C.], 75 Fed., 850) which holds the contrary of this last proposition, but the ruling is put upon the ground expressly that such suit against the receiver is ancillary to the principal action in the federal court, arises under the laws and constitution of the United States, grows out of the transactions of the receiver in his operations as receiver, and was hence removable without reference to citizenship or amount, and this reasoning is not sound, since the adoption of section 3 of said act of March 3, 1887, which provides " that every receiver or manager of any property appointed by any court of the United States may be sued in respect of any act or transaction of his in carrying on the business connected with such property, without the previous leave of the court in which such receiver or manager was appointed;

but such suit shall be subject to the general equity jurisdiction of the court in which such receiver or manager was appointed, so far as the same shall be necessary to the ends of justice."

It is true that a suit against a receiver of a federal court is one arising under the laws and constitution of the United States, but section 3 of the above act has the effect now to make a suit against a federal receiver a distinct and independent suit. It is no longer ancillary; and whether it is removable is to be determined by looking at it as an independent suit, and not as an ancillary suit; and the last clause of said section 3 does not continue or save the right to remove a suit brought against a federal receiver as it existed before the passage of section 3 of the act above. All these propositions are made perfectly clear by the cases of *Gilmore* v. *Herrick* and of *Ray* v. *Peirce, supra*. Judge Taft, in the first case, says: " It is true that before the enactment of section 3 of the act of 1888, litigants against federal court receivers were prevented from resorting to the state courts by their inability to sue such receivers except with the permission of the court appointing them. Such suits were then purely ancillary to the suit in which the receivers were appointed, and were completely subject to the control of the court in which the main action was pending. They were kept within the control of the court, not by removal, however, but by the process of contempt against any one who should attempt to sue the receivers without leave. So, too, suits in which it is sought to deal with the property in the custody of the receivers to subject it to sale or other remedy, can still be brought only by intervening petition or by dependent bill filed by leave of the court. *Compton* v. *Railroad Co.*, 31 U. S. App., 486, 524, s.c. 15 C. C. A., 397, s.c. 68 Fed., 263.

In this sense it is said that a court having custody of property draws to itself jurisdiction to consider and decide all questions arising concerning its disposition and management, even between persons not parties to the original suit in which it becomes necessary to take custody of the property. This is not

effected, however, in a federal court by virtue of any statute of removal, but solely through the inability of any other court to grant relief in respect of such property because it is in the custody of the federal court, and thus is beyond the jurisdiction of such other court. Any one claiming an interest in such property may appeal to the federal court for relief, which, in order to prevent injustice, through its process may exercise a purely ancillary jurisdiction to administer justice between such claimant and any one else claiming an adversary interest. Such ancillary jurisdiction is exercised only upon the prayer of the claimant filed in the principal cause. It is not exercised against one who might be a claimant by removing a suit lawfully begun by him in another jurisdiction. Congress, by section 3 of the act of 1888, has, in effect, declared that suits against receivers touching their transactions as such are no longer to be brought only where and in the form which the court appointing them shall permit, but in any court of competent jurisdiction, and in the form in which suits against other persons may be brought. They have ceased to be ancillary in the sense that they can be drawn to the court and cause in which the defendants were made receivers, either by process of contempt or otherwise. As suits they are no longer part of the original litigation. When reduced to judgment, of course, payment can only be enforced against the property and the priority of the claim determined in the court in which the original litigation is pending and in which the receivers were appointed, and this is the scope and meaning of the second paragraph of section 3 of the act of 1888. *Central Trust Co.* v. *East Tennessee, V., & G. R. Co.* (C. C.), 59 Fed., 523. Under that section suits against receivers are to be conducted, so far as their trial is concerned, not as ancillary suits, but as suits of original cognizance. If, thus considered, they come within the removal statute and can be removed to the same court in which the receivers have been appointed, that court must try them, not as ancillary proceedings, but as independent

suits, and can exercise no power to change their form from that which they had in the state court. Thus, if brought as suits at law in the state court, when removed they must be tried before a jury as suits at law."

Judge Baker says in the second case: "The fact that the suit is one arising under the laws of the United States does not entitle the defendant to remove the same from the state to the national court unless the matter in dispute exceeds, exclusive of interests and costs, the sum or value of $2,000. 25 Stat., 434, § 2. Hence, if the suit is removable on the application of the receiver, such a right of removal is dependent on the ground that the suit is one growing out of the acts and transactions of the receiver as an officer of this court, and as such is ancillary to the suit now pending in this court, in which the defendant was appointed receiver. When a court exercising jurisdiction in equity appoints a receiver to hold the property of an insolvent corporation, that court assumes the administration of the estate. The possession of the receiver is the possession of the court, and the court itself holds and administers the estate through the receiver, as its officer, for the benefit of those whom the court shall ultimately adjudge to be entitled to it. *Porter* v. *Sabin*, 149 U. S., 473, s.c. 13 Sup. Ct., 1008, s.c. 37 L. Ed., 815; *White* v. *Ewing*, 159 U. S., 36, s.c. 15 Sup. Ct., 1018, s.c. 40 L. Ed., 67. The possession of the court, through its receiver, draws to the jurisdiction of that court the control of the assets of the insolvent, so far as persons having claims to participate in the distribution of such assets are concerned, and parties must go into that court in order to assert their rights, prove their claims, and secure whatever may be due them, or their share or interest in the estate. It is the settled law that every person having a claim or demand against an estate in the possession of a receiver, or against the receiver for any act or transaction of his in his official capacity, must assert such claim or demand in the court in which such receiver was appointed, without regard to the nature of the

controversy, the citizenship of the parties, or the sum or value of the matter in dispute. The prosecution against the receiver of any such claim or demand in any other court, without the leave of the court appointing such receiver, would be regarded as a contempt of its authority, and any judgment recovered against him in his official capacity in any other court would be treated as unauthorized and void by the court having jurisdiction of the estate of the insolvent in the possession of its receiver. Such are the general principles of the law, uninfluenced by legislation applicable to receiverships. The consequences flowing from these principles of the law were found to be intolerably burdensome to persons having small claims and demands against the insolvent or against the receiver for his acts or transactions in his official capacity.

"To compel the claimant to prosecute a suit against the receiver of a railroad for a small demand in the court of his appointment, generally remote from the claimant's residence, involves such inconvenience and expense as to amount in many cases to a practical denial of justice. Even an application to the court who appointed the receiver for leave to sue in another court nearer the residence of the claimant and his witnesses, was found to be inconvenient and expensive, and frequently such applications were met with denial. With the multiplicity of railroad receiverships the evil became so intolerable that legislation was found necessary to secure relief, so section 3 of the act of March 3, 1887, as amended and re-enrolled in the act of August 13, 1888 (25 Stat., 435), was enacted. It is also clear that such claimants are at liberty, without previous leave of the courts of the United States, to sue the receiver of such courts in any other court in respect of any act or transaction of his in carrying on the business of such receivership. On the part of the claimant it is contended that such right to sue the receiver, given by the statute, carries with it the right to pursue the case to final judgment in the court in which the suit was brought, when the matter in controversy is $2,000 or less

in value.   On the part of the receiver the contention is that the present suit is ancillary to the principal suit now pending in this court, and hence is removable from the state court into this court, although the matter in controversy is only $2,000 in value.   The question here involved has never been decided by the supreme court, and, so far as this court is advised, it has never been passed upon but once by a circuit court.

" The right of receivers to remove any suit brought in a state court, where the matter in dispute, exclusive of interest and costs, exceeds the sum or value of $2,000, remains unaffected by the acts of 1887-88.   The right of removal in such cases rests upon the fact that the suit is one against a receiver appointed by a court of the United States, and is therefore one arising under the laws of the United States.   The right to sue in the state court without procuring the leave of this court includes the right to prosecute such suit to final judgment when the amount involved is $2,000 or less.   When the amount in controversy is $2,000 or less, perhaps, under the last clause of section 3 of the acts of 1888, if petition for removal showed a state of facts making a removal necessary to the promotion of the ends of justice, this court would permit the removal, and take jurisdiction, even though the state court had denied a removal.   But no such state of facts is disclosed by the petition for removal filed in this case.

"As was said by the supreme court in the case of *Railway Co.* v. *Johnson*, 151 U. S., 81, s.c. 14 Sup. Ct. 250, 256, s.c. 38 L. Ed., 81: ' Certainly the preservation of general equity jurisdiction over suits instituted against receivers without leave does not, in promotion of the ends of justice, make it competent for the appointing court to determine the rights of persons who were not before it or subject to its jurisdiction, and the right to sue without resorting to the appointing court, which involves the right to obtain judgment, cannot be assumed to have been rendered practically valueless by this further provision of the same section of the statute which granted it.'   If, in suits in-

volving $2,000 or less, brought in a state court, the receiver may at once remove them into a court of the United States, then the right to sue secured to the claimant by the statute is rendered practically valueless. Such a construction would defeat the true meaning and intent of the statute. The statute abrogates the old rule on the subject of suing receivers. It is made lawful now to sue a receiver appointed by a court of the United States without procuring leave of that court. The court has no discretion to say when or where its receiver may be sued. The right to sue is given without condition or limitation, and, as was said by the supreme court, it 'cannot be assumed to have been rendered practically valueless by this further provision of the same section of the statute which granted it.' "

Of course, all that has been cited is aside from the doctrine so well put in *Compton* v. *Jesup*, 15 C. C. A., 397, s.c. 68 Fed., 263, and in *White* v. *Ewing*, 159 U. S., 36, s.c. 15 Sup. Ct., 1018, s.c. 40 L. Ed., 67. That doctrine is that where receivers have been appointed by a federal court over an insolvent corporation, and such court, through its receivers, has first acquired possession of the property of the corporation, the possession of the receiver is the possession of the court; the receiver is a mere hand of the court, to administer and wind up the affairs of an insolvent corporation, and the federal court will draw all suits touching such property against such receivers to itself for final adjudication; and, where suits are instituted in a state court against such receivers touching such property, they are removable without reference to citizenship or amount. But it is proper to say that the point whether a suit against a receiver of a federal court is removable as ancillary, since the passage of section 3 of the act of 1888, *supra*, has never been before the federal supreme court. The cases of *Railroad Co.* v. *Martin*, 178 U. S., 245, s.c. 20 Sup. Ct., 854, s.c. 44 L. Ed., 1055, and *Holt* v. *Manufacturing Co.*, 176 U. S., 68, s.c. 20 Sup. Ct., 272, s.c. 44 L. Ed., 374, ap-

pear to hold with Judge Taft and Judge Baker, whose views we adopt. But this case is not even one against a receiver. It is an independent suit against the corporation, the state court having acquired actual possession of the property long prior to appointment of the receivers.

*Affirmed.*