. [No. 6886.]

### MILLER v. DAVIS, ADMINISTRATRIX.

1. DURESS—*Evidence to Establish*—Oral testimony to establish such coercion ·as will avoid the written engagement of parties must be reasonably convincing. It must appear that the party was compelled to enter into the contract by illegal acts of the other, and that the engagement was not his voluntary act. —(493).

· The evidence examined and held insufficient to establish duress—(493, 494).

2. ——*Effect*—A contract made under duress is not void, but valid until disaffirmed—(494).

3. ——*Threats to do What One May Lawfully do*, not duress. —(494).

4. ——*Ratification*—A contract obtained by duress is ratified by accepting benefits growing out of it, or by acquiescence for any considerable time, with opportunity to assail it—(494).

*Error to Pueblo District Court.*—Hon. J. E. RIZER, Judge.

Messrs. McCORKLE & McCORKLE, for plaintiff in error.

Messrs. ADAMS & GAST, for defendant in Error.

Plaintiff in error, as claimant, filed a claim, consisting of two separate causes of action, in the county court of Pueblo county against the estate of E. W. Davis, as follows: (1) To amount realized by deceased from an undivided one-fourth interest in certain placer claims (naming them) in the Cripple Creek mining district, $2,500, and interest on same from April 1, 1901, at the rate of twelve per cent. per annum; and (2) To amount realized by the deceased for an undivided one-fourth interest in certain lode mining claims (naming them) in the Cripple Creek mining district, in the sum of $650, with interest on the same from January 1, 1903, at the rate of twelve per cent. per annum.

The county court allowed her claim, from which the administratrix appealed to the district court, where a trial before a jury resulted in a verdict in favor of claimant. On motion of the administratrix the verdict was set aside, and a new trial granted. At a second trial before a jury the court sustained a motion for non-suit, and dismissed the action. Claimant brings the case here for review on error. Her right to the items of her account is based upon the ground that the sums thereby claimed were obtained from her by the deceased under duress. To substantiate her claim against the estate upon this ground, her version, from the testimony upon which the non-suit was granted, is substantially as follows:

The title to the lode claims was in the Cambria Mining Company. A judgment was obtained against this company by one Everett in the sum of fifteen hundred dollars. Mrs. Miller claimed she owned a one-half interest in this judgment. Execution issued thereon and the property was sold, the certificate being issued to Everett. Mrs. Miller had agreed to purchase Everett's interest in the certificate, and thus, if a sheriff's deed issued, obtain full title to the lode claims. The certificate, however, was assigned by Everett to a Mrs. Brooke. Mrs. Miller claims to have obtained an agreement from Mrs. Brooke to assign the certificate for $750.00. She was without funds, and through her husband, Davis was solicited to advance money and take an interest in the lode claims, with the view of organizing a corporation to take them over. Davis was told about this time that Mrs. Miller needed the sum of two thousand dollars, within a few days, with which to arrange for the sheriff's deed and discharge other indebtedness then due. After examining the claims Davis told her that he did not think he could form a corporation within the time necessary; but that he might

loan her money to the amount of two thousand or twenty-five hundred dollars, but did not think the lode claims were sufficient security for either of these amounts. About this time negotiations were opened between the parties for the placer claims. The title to these properties was in the name of one Swanquist, but, in fact, belonged to Mrs. Miller. They were encumbered by a deed of trust, to secure something over $200, which was then past due. The holder of this obligation was demanding payment. Davis purchased the note and deed of trust, and later took an assignment of the sheriff's certificate on the lode claims from Mrs. Brooke, for which he paid the sum of $760, and directed the husband of plaintiff to secure a deed from Swanquist to the placer property. Mrs. Miller was present when the arrangement was made for the purchase of the sheriff's certificate from Mrs. Brooke, and represented by counsel. At this stage of the negotiations, claimant contends (and there is some testimony to the effect) that Davis had agreed orally to loan her on the lode and placer claims the sum of twenty-five hundred dollars; that subsequently he refused to carry out this arrangement, saying that he now held the sheriff's certificate, and an over-due note secured by deed of trust on the placer property, and that instead of loaning the money, he had concluded to have an agreement entered into between himself and Swanquist, and that if it was not accepted he he would handle the property to suit himself. This contract provided, in substance, so far as material to consider, that Davis was to pay Swanquist twenty-five hundred dollars, divided into a first payment of two thousand dollars, and a final payment of five hundred dollars. It further provided that Davis was to be an owner of a one-fourth interest in the placer and lode claims. It also provided that if either group of claims was sold within

eighteen months, that Davis was to receive twenty-five hundred dollars, paid under the terms of the contract, and any monies he might advance in perfecting and defending the title to the properties; but in case such a sale was not made within that period, and Davis had not been repaid the twenty-five hundred dollars mentioned, that then he would transfer an undivided three-fourths interest in the properties to Swanquist, and would take a trust deed thereon to secure the payment of the twenty-five hundred dollars, and other monies he might have advanced under the terms of the contract, to be evidenced by a note to run for three years. Mrs. Miller claims to have objected to this arrangement. In answer to this objection, Davis stated that, having title to the lode claims, and an over-due note secured by deed of trust on the placers, that if the contract was not accepted, he would handle the property to suit himself. Mrs. Miller's husband then endeavored to secure money with which to pay off Davis, but was not successful.

The contract was signed by Davis in Pueblo, on June 26, 1899, and was taken to Cripple Creek by claimant's husband, and there signed by Swanquist two days later. On April 25, 1900, the contract was assigned by Swanquist to Mrs. Miller. The property was not disposed of within the eighteen months mentioned in the contract. It remained in full force and effect without any objection on the part of either Mrs. Miller or her husband, until June, 1901, when Mr. Miller met Davis at Cripple Creek, and offered to repay him the money he had advanced, and demanded that he return Mrs. Miller her property. This was refused. Later, in the same month, a similar offer and demand was made, which Davis again refused, saying that the only thing he would do would be to deed back a three-fourths interest in the property and take a deed of

trust·thereon for·$2,775, drawing interest at the rate of 12 per cent. per annum for three years. The next day Mrs. Miller personally made a similar offer and demand, which was refused. Upon this date, June 22, 1901, Davis, in accordance with the terms and conditions of the contract, deeded to Mrs. Miller a three-fourths interest in the property, and she executed a deed of trust as in the contract provided, to secure $2,775 due in three years from December 26, 1900, with interest at twelve per cent. per annum. On the back of the contract, at the time of these transactions, she endorsed a receipt, whereby she acknowledged having received a deed from Davis for a three-fourths interest in the property therein mentioned, which she accepted in full satisfaction of the contract, and in consideration of its having been satisfied, surrendered it to Davis. This was signed by herself and witnessed by her husband. She claims that when these instruments were executed, Davis told her that unless she signed them then, he would sell the property to whom he pleased.

At the time of these transactions, claimant procured the placing by Davis of deeds to her for a one-fourth interest in the lode and placer claims, in escrow in the First National Bank, of Pueblo. The deed to the placer properties was to be delivered on payment of twenty-five hundred dollars, and the deed to the lode claims on payment of fifteen hundred dollars. The escrow time limit was April 21, 1902. Prior to June 22, 1901, Mrs. Miller had learned that the city of Victor was considering the placer ground as a reservoir site, and had opened negotiations with the city authorities looking towards a sale. A little later the Altman Water Company began a suit to condemn the placers, or a part thereof, for a reservoir site to furnish water to the town of Altman. In this suit E. F. Miller, the husband of claimant, E. W. Davis, G. A.

Swanquist and others were named as parties defendant. Mrs. Miller was not made a party; but on July 23, 1901, a month after she had accepted a deed for three-fourths interest in the properties, and executed a deed of trust thereon to Davis, she filed a cross-petition in the condemnation proceedings, wherein she stated, under oath, that she was the owner of record of an undivided three-fourths interest in fee to the placers described in the petition for condemnation, and that the remaining one-fourth interest in and to the premises belonged to E. W. Davis, one of the parties to the proceeding. She then states that she held a written option from Davis to purchase the one-fourth interest in the placers for the sum of twenty-five hundred dollars, which was given her for a valuable consideration before the commencement of the condemnation proceedings, and that in accordance with such option, Davis had executed and acknowledged a deed conveying his interest in the placers and deposited it in the First National Bank of Pueblo. While the condemnation proceedings were pending, and after the instruments of June 22, 1901, had been executed and delivered, claimant's husband wrote a letter to Davis, in which he stated that it might require a long time to settle the litigation with the Altman Water Company, and that if he, Davis, would accept fifteen hundred dollars for a release for his deed of trust on the placers and one thousand dollars for his quarter interest therein, that he, Miller, could sell, subject to the law-suit, which would enable them to get their money at an early date, and avoid further litigation; and that if his offer was not accepted in ten days he would be compelled to sell Mrs. Miller's three-fourths interest to whoever desired to purchase, and leave him (Davis) and his future partners to fight the case themselves.

Mrs. Miller sold the placers to the city of Victor for $9,709.00. Out of this sum she discharged the indebtedness secured by the deed of trust, by the city of Victor assuming the payment of her note to Davis, which it afterwards paid. The city also took up the deed to her from Davis, for a one-fourth interest in the placers thereby conveyed, by depositing in the bank, according to the escrow instructions, the sum of twenty-five hundred dollars to the credit of the grantor. The remainder of the purchase price was paid to Mrs. Miller in cash. By this transaction the deed of trust on the lode claims was also satisfied and released. At her solicitation an extension of the escrow limit as to the lode claims was granted to January 1, 1903.

In January, 1902, there appears to have been some controversy between the parties over the expenses incurred in connection with the condemnation proceedings instituted by the Altman Water Company. This was adjusted by Davis reducing the price of the lode claims from $1500 to $650. On that date Mr. and Mrs. Miller signed and delivered to Davis the following receipt: "We have no claim or demand of any kind whatever against E. W. Davis, except his escrow agreement." Mrs. Miller also acknowledged over her signature that she had no claim or demand against Davis growing out of the condemnation suit, and that she would discharge all costs for which he was liable in that action. Subsequently, she took up the deed to the lode claims by depositing with the bank the price agreed upon, $650.00. This was December 31, 1902. Davis died the latter part of 1903. Claimant never instituted any action against him to establish the claim which she is now asserting against his estate.

In addition to these matters, it appears from the testimony without entering into details, that there was con-

siderable correspondence between the parties, after the
contract was entered into with Swanquist, and that the
husband of claimant solicited Davis to enter into an ar-
rangement with him on lode claims adjoining those
named in the contract, and that at no time was any claim
ever made in these letters that Davis had been guilty of
duress in securing the one-fourth interest in the proper-
ties or the deed of trust from Mrs. Miller.   One of these
letters was written by Miller to Davis in September, after
the Swanquist contract was signed, in which he stated, in
substance, that as the sheriff's deed to the lode claims
had issued, and was of record in Teller county, "that the
matter of the Cambria claims and placers are all closed,
as per our agreement, except the five hundred dollars,"
he desired that a draft for that amount be sent to Swan-
quist at an early date.   This letter was written eight days
before the five hundred dollars was due under the Swan-
quist contract.   This sum was paid, as per agreement.
Swanquist receipted for it, and entered into an agreement
running to Davis, with Miller as surety, whereby they
agreed that in the event any defects appeared in the title
to the properties, they would do everything possible to
make them good.

The items of $2500 and $650 which she paid for the
respective interests in the lode and placer claims consti-
tute the basis of her claim filed against the estate.   The·
reason she assigns for having assented to the contract en-
tered into between Davis and Swanquist, and subse-
quently securing the $2775.00 on a three-fourths interest
in the properties and paying, in the aggregate, $3,150.00
for·a one-fourth interest therein, and why she should re-
cover the latter sum with interest, is, that the evidence
establishes her financial condition was such at the time
Davis refused to carry out his oral agreement to loan her

twenty-five hundred dollars on the property, after he had obtained control of the title to the properties involved, that she was forced to accept the arrangement he offered, and which she entered into, or lose all her rights and interests in the property; that Davis knew her financial situation, and took advantage of it to compel her to assent to the contract entered into with Swanquist, and later, for the same reason, to comply with its terms and conditions, and purchase from him the one-fourth interest for the sums she paid therefor.

Mr. JUSTICE GABBERT delivered the opinion of the court.

Oral testimony to establish a degree of coercion which will avoid the written engagement of parties for duress must be at least reasonably convincing, that the party seeking to avoid a written contract on this ground was compelled to enter into it by such illegal acts on tne part of the other as compelled him to do what he wou..; not have done voluntarily. If there is any testimony whatever tending to show duress, it is wholly insufficient to overcome the presumption that the solemn written engagements which claimant entered into were voluntary ɔ her part, or establish that her acquiescence in the Swanquist contract was not her voluntary act. In fact, it might well be said that the evidence conclusively establishes the contrary. Independent of the evidence on the subject of duress, claimant is estopped from raising that question. The transactions of which she complains had their inception in the Swanquist contract. For nearly two years after its execution, she did not object to it, or take any steps to have it annulled. She took an assignment of this contract, and in accordance with its terms, accepted a conveyance of a three-quarters interest in the property

involved, and executed a deed of trust to secure .Davis ·for the money. he. had advanced,.as provided in the con-tract. The alleged threat of Davis that. if .she did not comply with the contract,.he .would. sell the property,to whom he pleased, did not constitute duress. .It is neither coercion.nor duress to threaten to do what.one has a legal right to do.—*Dispeau v. First.National Bank,* 53 Atl., 868. She accepted an option to purchase the interest of Davis in the properties for a specified sum. Acting on the rights acquired by this conveyance to. her and the option she obtained, she negotiated a sale of the placers by which she disposed of the title she held, and that which she obtained by taking up the option. When the entire trans-action was finally closed, she failed to· take any steps to assert her alleged rights against Davis during his life-time,· but waited until after his death, which did not oc-cur for nearly a year, and· then commenced this proceed-ing against his estate. A contract made under duress is voidable at the instance of the one· upon whom duress is practiced, not void; and is valid ·as to such party until disaffirmed, not void until affirmed. A contract obtained under duress is ratified by accepting the benefits growing out of it, or by silence or acquiescence for any considerable length of time after opportunity is afforded to avoid or have it annulled.—*Dispeau v. First National Bank, supra; Wheeler v. McNeil,* 101 Fed. 685 ; *Horn v. Beatty,* 37 Southern, 833 ; *Eberstein v. Willets,* 24 N. E. 967.

The judgment of the district court is affirmed.

*Judgment affirmed.*

Mr. JUSTICE MUSSER and Mr. JUSTICE HILL concur.