# BARNETTE v. WELLS FARGO NEVADA NATIONAL BANK ET AL.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

No. 149. Submitted January 15, 1926.—Decided March 15, 1926.

1. A suit to recover land and funds in charge of a receiver of a court of Alaska, created by laws of Congress, is removable from a state to a federal court, under Judicial Code § 28, and § 33, as amended August 23, 1916. P. 441.

2. Where a suit was removable on the face of the bill, and the removal is not challenged, removal may be presumed to have been rightly taken, although, due to omission by stipulation of the removal papers from the transcript, the ground on which removal was actually sought and allowed does not affirmatively appear. P. 440.

3. Authority from a court to its receiver to appear, defend, and make counterclaim in a suit against him in another court is equivalent to leave to the plaintiff to bring the suit. P. 441.

4. Acts induced by duress which operate only on the mind and fall short of physical compulsion, are not void but voidable only. P. 444.

5. It is prerequisite to equitable relief canceling a contract that the election to disaffirm be exercised promptly after cessation of the duress, the degree of promptness depending largely upon the effect of delay upon those whose rights are sought to be divested. P. 444.

6. Unexplained delay of more than three years *held* fatal to suit to set aside a deed for duress, where the defendants were left in ignorance of plaintiff's intention and were necessarily prejudiced. P. 445.

298 Fed. 689, affirmed.

APPEAL from a decree of the Circuit Court of Appeals which reversed a decree of the District Court favorable to the appellant in her suit to set aside a deed upon the ground of duress, and for recovery of rents, etc.

*Messrs. Wm. H. Chapman* and *R. P. Henshall* for appellant.

The case was not barred by laches. *Grier* v. *Union Nat. L. Ins. Co.,* 217 Fed. 293; *United States* v. *Dunn,* 268 U. S. 121; *Truebody* v. *Truebody,* 137 Cal. 172; *Wilson* v. *Oswego Tp.,* 151 U. S. 56; *Savings Bank* v. *Schell,* 142 Cal. 505; *Southern Pacific Co.* v. *Bogart,* 250 U. S. 483; *Northern Pacific Co.* v. *Boyd,* 228 U. S. 482; *Allen* v. *Leflore County,* 29 So. 161; *Eureka Bank* v. *Bay,* 135 Pac. 584; *Jesson* v. *Noyes,* 245 Fed. 46.

The depositors who practised the duress were the beneficiaries under the receiver's trust. They were the real parties in interest. *Ziang Sung Wan* v. *United States,* 266 U. S. 1; *Bryant* v. *Levy,* 52 La. Ann. 1649.

Where one is fraudulently induced to do an act, he supposes that he is, in fact, doing something different from what he has done, and whenever he becomes acquainted with the actual facts, or when such circumstances exist as put him upon notice, his rights spring into being. In the case of duress, the wronged party knows exactly what he is doing but his mind is compelled to do that which he would not otherwise have done. The time, therefore, when he may assert his legal rights is dependent upon entirely different considerations and the duress may be regarded as continuing for a long time subsequent. The plaintiff is neither a business man nor a lawyer, and her case must be viewed in a very different attitude from the case of one who is threatened with duress as against himself alone. The duress here affected her husband and children as well as herself. *Allen* v. *Leflore County,* 29 So. 161; *Eureka Bank* v. *Bay,* 135 Pac. 584; *Blither* v. *Packard,* 98 Atl. 929; *St. L. & S. F. Ry. Co.* v. *Gorman,* 100 Pac. 647; *Iron Co.* v. *Sherman,* 20 Md. 117.

Even where there is no statute authorizing a receiver to be sued, the true principle is, that the failure to obtain leave to sue does not go to the jurisdiction. The rule is one of comity and not jurisdiction. Tardy's Smith on Receivers, § 748; High on Receivers, 4th ed., § 254a;

*Walcott* v. *Shriner,* 153 Ind. 35; *Ray* v. *Pierce,* 81 Fed. 881; *Dow* v. *Memphis & S. R. R.,* 20 Fed. 260; *Central T. Co.* v. *St. Louis,* 40 Fed. 426; Alderson on Receivers, §§ 525–526. But whether the defect be regarded as jurisdictional, or as arising out of comity, the authorities are all agreed that it may be waived. See Tardy's Smith on Receivers, § 751.

Messrs. *F. De Journel* and *Sidney M. Ehrman* for appellees.

MR. JUSTICE STONE delivered the opinion of the Court.

The appellant brought suit in the Superior Court of San Francisco County, California, for the surrender and cancellation of a deed of land and to recover money received by the appellee Noyes, a receiver acting under the appointment of an Alaska court, and deposited by him with the appellee bank, as rents derived from the land conveyed and as proceeds of the sale of part of it. The conveyance was made by appellant to receivers, predecessors in office of the appellee Noyes, appointed by the District Court for the District of Alaska. Relief was sought on the ground that the conveyance had been procured by duress. The cause was removed to the United States District Court for northern California, and trial in that court resulted in a decree for the plaintiff. On appeal to the Circuit Court of Appeals the decree was reversed on the ground that the suit was barred by laches. 298 Fed. 689. The case comes to this Court on appeal. Jud. Code, § 241, before Act of February 13, 1925.

The jurisdiction of the District Court was not challenged in the Circuit Court of Appeals; nor is it challenged here. The petition for removal from the state court to the District Court, and the motion to remand made and denied in the latter, are not shown in the record. They were omitted from the transcript made up on appeal

to the Circuit Court of Appeals, because the parties had
so stipulated under Rule 75 of the Equity Rules then in
force (226 U. S. Appendix p. 23) relating to the reduc-
tion and preparation of transcripts on appeals in suits in
equity.   It therefore does not affirmatively appear on
what ground the removal to the District Court was sought,
allowed and sustained.   But an examination of the bill,
which is set forth in the record, shows that the purpose of
the suit was to recover land and funds then in charge of
the receiver of a court in Alaska, which was created by
laws of Congress and derived its powers and authority
from those laws.   Such a suit was removable under § 28
of the Judicial Code as supplemented by the amendment
of § 33 by the Act of August 23, 1916, c. 390, 39 Stat.
532.   *Matarazzo* v. *Hustis,* 256 Fed. 882, 887–9; see *Texas
& Pacific Ry. Co.* v. *Cox,* 145 U. S. 593, 603; *Board of
Commissioners* v. *Peirce,* 90 Fed. 764.   The alleged right
to recover grew out of transactions between the plaintiff
and the receivers within the territory of Alaska with
reference to land located in Alaska, in all of which the
receivers were acting in virtue of authority conferred on
them as officers of the Alaska court.   *Rouse* v. *Hornsby,*
161 U. S. 588, 590.   As all this is apparent from the face
of the bill, and as the removal is not challenged here, we
think the presumption should be indulged that the re-
moval was rightly taken, and that the District Court had
jurisdiction.

We recognize that property in charge of a receiver is
in the custody of the court by which he was appointed and
under which he is acting, and that as a general rule other
courts cannot entertain a suit against the receiver to re-
cover such property, except by leave of the court of his
appointment.   *Lion Bonding Co.* v. *Karatz,* 262 U. S.
77, 88–89.   But the record shows that, shortly after this
suit was begun, the court in Alaska expressly authorized
the receiver to appear in the suit and to make defense

and present a counterclaim in it. This was the full equivalent of granting leave to bring the suit. That the order was made shortly after, instead of before the suit was begun, is not material. *Jerome* v. *McCarter*, 94 U. S. 734, 737; *Board of Commissioners* v. *Peirce, supra,* 765–6. The plaintiff contended and the District Court held that, even if there had been no such leave, the suit could be maintained under the legislative permission given in § 66 of the Judicial Code; but we need not consider that question.

On January 5, 1911, the District Court for Alaska appointed receivers for the Washington-Alaska Bank, a Nevada banking corporation engaged in business in Fairbanks, Alaska. The husband of the appellant had been the president, director and manager of the bank from its incorporation. In February, 1911, the appellant, then residing in Los Angeles, California, went with her husband to Fairbanks to assist in the liquidation of the bank's business, its assets and affairs being then in the hands of the receivers. Six weeks later, after consultation with their attorney, appellant and her husband tendered to one of the depositors of the bank, as trustee for the unpaid depositors, a deed conveying real estate of the husband and real estate which was the separate property of the appellant, located in Alaska. Acceptance of the deed was refused on the ground that by it criminal prosecution of the husband and enforcement of his civil liability might be prejudiced or waived. Later a similar deed was tendered to the receivers and rejected by them for the same reasons. Appellant and her husband then filed a verified petition in the court in which the receivership was pending, praying that the receivers be directed to accept the trust deed and expressing the desire to prevent the commencement of legal proceedings against them by the receivers and to pay all the depositors of the bank in full. The court made an order authorizing the receivers, as

such, to accept the deed and administer the trusts created by it, in connection with their duties as receivers.

The deed was executed by appellant and her husband on March 18, 1911, and was separately acknowledged by appellant, the certificate of acknowledgment stating that she executed it voluntarily and that " she did not wish to retract it." The receivers took possession of the property in Alaska; they and later their successor, the appellee, Noyes, received the rents from it and the proceeds of sale of some of the land; and the fund now in dispute was derived from the administration of the trust.

Within a week after executing the conveyance, appellant departed from Alaska with her husband and returned to her residence at Los Angeles. More than three years later, on November 16, 1914, she instituted suit in the Alaska court against the receivers, to set aside the conveyance of her separate property on the ground that it had been procured by duress. The case was not brought to trial, and, after more than three years, on August 1, 1918, she consented to a non-suit, having in the meantime, on July 24, 1918, commenced the present suit.

The district court below held that appellant's conveyance had been procured by duress. This conclusion was based on findings that, during the period of appellant's sojourn in Alaska, in 1911, threats or "suggestions" were made to her, (which it appears were made by two women depositors of the bank and by others who are unidentified,) that her children would be kidnaped and her husband and herself subjected to personal violence; that under the circumstances these threats aroused in her a reasonable fear for the safety of her children, her husband and herself, and induced the execution of the deed to the receivers.

We turn aside from the objections pressed upon us that the evidence was insufficient to establish duress and that in neither pleading nor proof is it suggested that the

receivers or the great majority of the creditors of the bank were parties to or aware of the alleged duress. See *Fairbanks* v. *Snow,* 145 Mass. 153. Nor need we consider any of the numerous defenses interposed, except the acquiescence of appellant in her deed, and her delay in asserting her rights, which, in the circumstances, are decisive of the case.

Appellant's cause of action is necessarily founded upon the assertion of the rightful and effective exercise of the power to disaffirm her conveyance, which arose as soon as she was relieved from the compulsion of the alleged duress. Acts induced by duress such as is here relied on, which operates only on the mind and falls short of actual physical compulsion, are not void in law, but are voidable only, at the election of him whose act was induced by it. *Andrews* v. *Connolly,* 145 Fed. 43, 46; *Miller* v. *Davis,* 52 Colo. 485, 494; *Eberstein* v. *Willetts,* 134 Ill. 101; *Fairbanks* v. *Snow, supra; Miller* v. *Lumber Co.,* 98 Mich. 163; *Oregon & P. R. R. Co.* v. *Forrest,* 128 N. Y. 83. If there was duress here, appellant, as soon as she was relieved from its operation, was in a position either to disaffirm her conveyance or to allow it to stand undisturbed as the free and formal disposition of her rights. If her choice was to disaffirm, it might have been evidenced by suit timely brought or by any other action disclosing her purpose to those who would be affected.

In that situation she was subject to the requirement of equity that an election to disaffirm and to recall the legal consequences of an act which has operated to alter legal rights by transferring them to others, must be exercised promptly. *Andrews* v. *Connolly* and other cases cited, *supra,* show how this requirement is applied in cases of duress. The principle has a like application where the right is founded on fraud. *Upton, Assignee,* v. *Tribilcock,* 91 U. S. 45, 54, 55; *Wheeler* v. *McNeil,* 101 Fed. 685; *Blank* v. *Aronson,* 187 Fed. 241.

What promptness of action a court may reasonably exact in these circumstances must depend in large measure upon the effect of lapse of time without such disaffirmance, upon those whose rights are sought to be divested. The appellant formed the intention of taking proceedings to set aside her conveyance immediately on her return to Los Angeles, in April, 1911. This intention remained undisclosed for more than three years until she brought suit in the district court of Alaska in November, 1914. There is no evidence that the threats of violence were renewed after she left Alaska, or that they operated to prevent the prompt exercise of her election when she had returned to her home in Los Angeles. Her husband was brought to trial upon criminal charges growing out of his administration of the affairs of the bank, and criminal proceedings were concluded in December, 1912, or in 1913. During the period from April, 1911, until November, 1914, appellant, who was represented in Alaska by counsel and by an attorney in fact, was aware that the receivers, and later the appellee Noyes, none of whom was shown to have had any knowledge of the alleged duress, were engaged in the administration of the trust created by appellant's conveyance, under an order of the court obtained on her petition. During that period, she made no effort to advise the court or the receivers of the alleged duress or of her intention to disaffirm her deed.

By the provisions of the deed, the grantees were given unrestricted power of sale of the property after November, 1914, but it was expressly provided that sales might be made in the meantime by the united action of the grantors and grantees, and the proceeds paid to the grantees under the trust provisions of the deed. Appellant joined with her husband and the appellee receiver in a sale of one of the plots of her separate property, the conveyance being executed in her behalf by her attorney

in fact and the proceeds being paid to the appellee in November, 1911. This unexplained delay of more than three years in exercising appellant's asserted right to disaffirm her conveyance, while the appellee and his predecessors were left in ignorance of her intention to assert it, and her affirmative action as well, in recognizing the validity of her deed and the authority of the appellee under it, establish conclusively her election to allow her conveyance to stand as the unrevoked and effective agency for the disposition of her rights.

The case is not one which requires us to consider the effect of mere delay in bringing suit to enforce a claim of which appellees had notice, with the consequent opportunity to protect themselves, in some measure, from the prejudice which would otherwise result from mere lapse of time, as in *Simmons Creek Coal Co.* v. *Doran,* 142 U. S. 417, and *Southern Pacific Co.* v. *Bogart,* 250 U. S. 483, relied upon by appellant. Nor have we to do with a situation where complainant's silence did not mislead or prejudice the defendants, as in *Northern Pacific Railway Co.* v. *Boyd,* 228 U. S. 482, also relied upon. Here the very existence of the appellant's right depends upon the timely exercise of her election to disaffirm the deed. Delay in its exercise was necessarily prejudicial to her grantees; for they were entitled to and did rely and act upon the authority of her deed, and their defense under the circumstances was necessarily impeded and embarrassed by the lapse of time during the period in which they were left in ignorance of appellant's claim.

The judgment of the Circuit Court of Appeals is

*Affirmed.*

Mr. Justice Brandeis, with whom Mr. Justice Sanford concurs, dissenting.

In my opinion, the decree of the Circuit Court of Appeals should be reversed with directions to the District

Court to remand the case to the state court, or this Court should, in its discretion, order that copies of all papers in the District Court relating to the removal be filed here, so that we may determine whether the lower courts have properly exercised jurisdiction. Compare order issued February 1, 1926, in *Whitney* v. *California.*

The determination of the jurisdiction of the courts below is one of the essential functions of this Court. *Cochran* v. *Montgomery County,* 199 U. S. 260, 270. " On every writ of error or appeal, the first and fundamental question is that of jurisdiction, first, of this court, and then of the court from which the record comes. This question the court is bound to ask and answer for itself, even when not otherwise suggested, and without respect to the relation of the parties to it." *Mansfield, Coldwater & Lake Michigan Ry. Co.* v. *Swan,* 111 U. S. 379, 382; *Chicago, Burlington & Quincy Ry. Co.* v. *Willard,* 220 U. S. 413, 419; *Baltimore & Ohio R. R.* v. *City of Parkersburg,* 268 U. S. 35. The record must show affirmatively " the fact on which jurisdiction depends. It is not sufficient that jurisdiction may be inferred argumentatively from its averments." *Brown* v. *Keene,* 8 Pet. 112, 115; *Hanford* v. *Davies,* 163 U. S. 273, 279. If the jurisdictional facts appear affirmatively somewhere in the record, the case need not be dismissed merely because the pleadings fail to show them. *Robertson* v. *Cease,* 97 U. S. 646, 648; *Realty Holding Co.* v. *Donaldson,* 268 U. S. 398, 400. Amendment of the pleadings to conform to the facts shown by the record may be allowed either in the lower courts or in this Court. *Norton* v. *Larney,* 266 U. S. 511, 516. The record before this Court, which consists of 742 printed pages and several unprinted documents, includes everything which was before the Court of Appeals, but not the whole record before the District Court.

What parts were omitted does not appear. The essential jurisdictional facts are not shown in the pleadings or elsewhere in the record.

The record in this Court shows a bill of complaint to have a conveyance of real estate in Alaska annulled on the ground of duress and to have paid to the plaintiff moneys alleged to have been deposited in the Wells Fargo Nevada National Bank of San Francisco by one Noyes, claiming to act as receiver of a Nevada corporation. These funds are alleged to be the proceeds of a part of the real estate. The complaint is entitled "Superior Court of the State of California." The record shows next an answer filed in the federal court for the northern district of the State. All subsequent proceedings prior to the appeal were had in that federal court. From these facts, it may merely be surmised that the suit was begun in the state court and before answer removed to the federal court. But the record does not contain the petition for removal, nor any of the other papers ordinarily incident thereto. There is no reference to a removal in any order or decree, in any opinion, in the evidence, nor in any other paper or clerk's entry. The complaint did not allege the citizenship of the plaintiff. An amendment to the complaint, filed in the federal court two years later, states that the plaintiff has at all times been a citizen of California. The defendants named are the Wells Fargo Bank and one Noyes; the latter being joined both individually and as receiver appointed "not lawfully" by an Alaska court for a Nevada corporation. No allegation discloses the citizenship of Noyes. It does not appear anywhere in the record whether an ancillary receiver of the Nevada corporation was ever appointed in California.

A multitude of questions remain unanswered in this state of the record. Thus, we are left to conjecture whether all the defendants joined in the petition for re-

moval[1], and if not, by whom removal was sought[2]; on what ground removal was sought, whether that ground was good in law and whether it was substantiated by the facts appearing of record[3]; from what court removal was sought[4]; what action the court and the respective parties took; and whether, indeed, there was a proper petition for removal filed in time.[5]  On this record it seems to me that this Court is without jurisdiction and that the lower federal courts were also.  *Hegler v. Faulkner,* 127 U. S. 482.  As stated in *West* v. *Aurora City,* 6 Wall. 139, 142:

" It is equally fatal to the supposed right of removal that the record presents only a fragment of a cause, unintelligible except by reference to other matters not sent up from the State court and through explanations of counsel."

" There are no presumptions in favor of the jurisdiction of the courts of the United States." *Ex parte Smith,*

---

[1] Compare *Wilson* v. *Oswego Township,* 151 U. S. 56; *Hanrick* v. *Hanrick,* 153 U. S. 192; *Chicago, Rock Island & Pacific Ry. Co.* v. *Martin,* 178 U. S. 245, 248; *Gableman* v. *Peoria, Decatur & Evansville Ry. Co.,* 179 U. S. 335, 337; *Mayor* v. *Independent Steam-Boat Co.,* 115 U. S. 248; *Marrs* v. *Felton,* 102 Fed. 775, 779; *Yarnell* v. *Felton,* 104 Fed. 161, 162; *Scott* v. *Choctaw, O. & G. R. Co.,* 112 Fed. 180; *Miller* v. *Le Mars Nat. Bank,* 116 Fed. 551, 553; *Heffelfinger* v. *Choctaw, O. & G. R. Co.,* 140 Fed. 75; *Consolidated Independent School Dist.* v. *Cross,* 7 Fed. (2d) 491.

[2] Compare *Bacon* v. *Rives,* 106 U. S. 99; *Salem Trust Co.* v. *Manufacturers' Finance Co.,* 264 U. S. 182, 189; *Turk* v. *Illinois Central R. R. Co.,* 218 Fed. 315.

[3] Compare *Woolridge* v. *M'Kenna,* 8 Fed. 650, 677–678; *Mayer* v. *Denver, T. & Ft. W. R. Co.,* 41 Fed. 723; *Gates Iron Works* v. *Pepper & Co.,* 98 Fed. 449; *Yarnell* v. *Felton,* 104 Fed. 161, 163. But see *Canal & Claiborne Streets R. R. Co.* v. *Hart,* 114 U. S. 654, 660.

[4] Compare *Noble* v. *Massachusetts Ben. Ass'n,* 48 Fed. 337.

[5] Compare *People's Bank* v. *Calhoun,* 102 U. S. 256; *Manning* v. *Amy,* 140 U. S. 137; *First Nat. Bank of Parkersburg* v. *Prager,* 91 Fed. 689.

94 U. S. 455, 456; *Bible Society* v. *Grove,* 101 U. S. 610. We may not assume that there was jurisdiction merely because two lower courts have exercised it, apparently without protest.[6] We may not assume that documents omitted from the appellate record by agreement under Equity Rule 75 showed jurisdiction. The requirement that jurisdictional facts be affirmatively shown cannot be dispensed with. Compare *Hudson* v. *Parker,* 156 U. S. 277, 284. We may not indulge in conjecture as to the ground on which jurisdiction was invoked. If we were at liberty to do so, what appears in the fragmentary record before us would preclude our sustaining jurisdiction. Jurisdiction could not be sustained on the ground of diversity of citizenship, because the citizenship of the principal defendant is not disclosed. Jurisdiction could not be sustained under § 33, Judicial Code, as amended by the Act of August 23, 1916, c. 399, 39 Stat. 532, as a civil suit against " an officer of the courts of the United States for or on account of any act done under color of his office or in the performance of his duties as such officer," compare *Matarazzo* v. *Hustis,* 256 Fed. 882, because there is nothing to show that removal was sought upon this ground, or that the requirements of the statute were complied with, compare *Ex parte Anderson,* 3 Woods 124; *Rothschild* v. *Matthews,* 22 Fed. 6, or that there was " a causal connection between what the officer has done " and his asserted official authority. See *Maryland* v. *Soper, ante,* p. 9. Jurisdiction could not be sustained on the ground that the proceeding is ancillary, because no receiver of the Alaska bank was appointed in California, nor was its estate being administered there, *Mer-*

---

[6] It is true that, although no party can by his conduct prevent dismissal by this Court when the absence of jurisdiction is discovered, *Parker* v. *Ormsby,* 141 U. S. 81, mere irregularity in the removal may be waived where the suit might originally have been brought in the federal court. *Baggs* v. *Martin,* 179 U. S. 206.

*cantile Trust Co.* v. *Kanawha & Ohio Ry. Co.,* 39 Fed.
337; compare *Greene* v. *Star Cash & Package Co.,* 99
Fed. 656; and the ancillary character of the suit furnishes
no ground for removal. *Gilmore* v. *Herrick,* 93 Fed. 525.
Compare *Byers* v. *McAuley,* 149 U. S. 608, 618–620;
*Shinney* v. *North American Savings & Loan Bldg. Co.,*
97 Fed. 9. Jurisdiction could not be sustained on the
ground that the case is one " arising under the . . .
laws of the United States," because the mere fact that the
defendant Noyes is the reputed receiver of a state cor-
poration appointed by a federal court is not a ground for
removal.[7] *Gableman* v. *Peoria, Decatur & Evansville
Ry. Co.,* 179 U. S. 335. The record shows no other way
in which the case arises under the laws of the United
States. There is no actual controversy as to any fed-
eral matter. Compare *Niles Bement Pond Co.* v. *Iron
Moulders' Union Local No. 68,* 254 U. S. 77, 82.

---

[7] Following the decision of this Court in *Texas & Pacific Ry. Co.* v.
*Cox,* 145 U. S. 593, which upheld the right of removal from a state
court of a suit against a receiver of a federal corporation appointed
by a federal court, some lower courts, neglectful of the qualification
implicit in the fact of federal incorporation, permitted removal gen-
erally in suits against receivers appointed by federal courts. *Central
Trust Co.* v. *East Tennessee, V. & G. Ry. Co.,* 59 Fed. 523, 528;
*Jewett* v. *Whitcomb,* 69 Fed. 417; *Landers* v. *Felton,* 73 Fed. 311;
*Keihl* v. *City of South Bend,* 76 Fed. 921; *Lund* v. *Chicago, R. I.
& P. Ry. Co.,* 78 Fed. 385 (involving, however, a federal corpora-
tion); *Board of Commissioners* v. *Peirce,* 90 Fed. 764; *Pitkin* v.
*Cowen,* 91 Fed. 599; *Gilmore* v. *Herrick,* 93 Fed. 525; *Winters* v.
*Drake,* 102 Fed. 545, 550; *Pendleton* v. *Lutz,* 78 Miss. 322, 328.
Other lower courts, recognizing that limitation and also the dis-
tinction with respect to receivers of national banks, *Grant* v. *Spokane
Nat. Bank,* 47 Fed. 673, refused to permit removal in suits against
receivers appointed only in exercise of the general equity jurisdiction
of federal courts, confident that this Court would upon occasion
uphold the limitation. *Shearing* v. *Trumbull,* 75 Fed. 33; *Marrs* v.
*Felton,* 102 Fed. 775; *Chesapeake, Ohio & S. W. R. R. Co.'s Re-
ceivers* v. *Smith,* 101 Ky. 707. This Court, after holding in *Bausman*

v. *Dixon,* 173 U. S. 113, 114, that "the mere order of the Circuit Court appointing a receiver did not create a Federal question," held in *Gableman* v. *Peoria, Decatur & Evansville Ry. Co.,* 179 U. S. 335, that no removal could be allowed solely on the ground of the receiver having secured his appointment from a federal court. That case and the limitations it established have since been consistently recognized and followed. *Pepper* v. *Rogers,* 128 Fed. 987; *People of New York* v. *Bleecker St. & F. F. R. Co.,* 178 Fed. 156; *Wrightsville Hardware Co.* v. *Woodenware Mfg. Co.,* 180 Fed. 586; *Dale* v. *Smith,* 182 Fed. 360; *American Brake & Shoe Foundry Co.* v. *Pere Marquette R. R. Co.,* 263 Fed. 237; *State* v. *Frost,* 113 Wis. 623, 647. The principle of the decision, as there stated by the Court, 179 U. S. 338, gives effect to the avowed legislative policy underlying the enactment of the Act of Mar. 3, 1887, c. 373, 24 Stat. 552, as amended and re-enacted in § 66, Judicial Code.