■ ROBERT H. HARRIS et al., Respondents, v LOUIS CAMILLERI, Appellant. —In an action to recover damages predicated upon allegations of forgery and fraud and deceit, defendant appeals from an order of the Supreme Court, Nassau County, dated October 18, 1979, which denied his motion to dismiss the complaint pursuant to CPLR 3211 (subd [a]) and for summary judgment. Order reversed, on the law, without costs or disbursements, and motion granted to the extent that defendant is awarded summary judgment against the plaintiffs and the complaint is dismissed. Plaintiffs herein, husband and wife, are both attorneys and have pleaded three causes of action against the defendant for (1) compensatory damages arising out of the defendant's alleged fraud in inducing plaintiff Robert Harris to execute an individual continuing guarantee of the financial obligations of the now defunct Charles Wagner Mfg. Co. (Wagner); (2) punitive damages predicated upon the willful, malicious and unconscionable nature of the foregoing alleged fraud; and (3) compensatory and punitive damages arising out of defendant's alleged forgery of the signature of plaintiff Sondra Harris to the foregoing guarantee. The defendant was an officer of the Bank of Commerce (the bank for whose benefit the guarantee was executed), and was the manager of its East Side (Manhattan) branch. Notably, this is the same branch at which both Wagner and the Harrises maintained accounts. Insofar as it appears, plaintiff Robert Harris was also a shareholder, officer, and general counsel to the now defunct corporation. In the complaint, Mr. Harris alleged that defendant was aware of the fact that Wagner had received a Small Business Administration (SBA) loan, and that he was also aware of the fact that the foregoing precluded the corporation from borrowing additional funds from *any* source, including, of course, the Bank of Commerce. He further alleged that the corporation had filed with the defendant's employer a corporate resolution requiring the signatures of *two* of its officers prior to the granting of any loan, and that it had been normal operating procedure for the bank to honor corporate checks drawn against uncollected items deposited into its account. The record indicates that in mid-1976 the corporation was in serious financial trouble, and that at about this time the defendant, with knowledge of the loan restriction, allegedly suggested to the various officers and shareholders of Wagner that in order to obtain additional capital they "might wish to borrow funds from his bank which they might then invest in the business." Robert Harris and several others elected to do so, whereupon Harris (it is alleged) executed and delivered to the defendant a personal financial statement. Harris alleges that the statement was executed solely in connection with this personal loan and that it was never intended to help buttress his guarantee of any corporate obligations. Apparently sometime thereafter, the bank precipitately began to dishonor large numbers of corporate checks drawn against uncollected items, which understandably "threw the Wagner finances into chaos and disarray". At this juncture, defendant was requested "to see to it that our relationship with the bank return[ed] to normal", and he succeeded in obtaining assurances to that effect. However, on the following day, when the problem recurred, Harris again conferred with the defendant and was informed by the latter that "something was wrong" and that he (the defendant) required assurances of Wagner's continuing ability to meet its

financial obligations. It was at this time that Harris was allegedly requested to execute the personal continuing guarantee which is the focus of this lawsuit. That document specifically recites as its purpose "inducing the Bank of Commerce * * * to grant financial accommodations from time to time to [the] Charles Wagner Mfg. Co., Inc." and purports, by its terms, to personally and unconditionally guarantee "each and every obligation of the obligor [Wagner] to the Bank, due or to become due, now or hereafter existing". Mr. Harris does not deny his execution of the foregoing instrument, but contends that he did so in reliance upon the fraudulent misrepresentations of the defendant (1) that it (the guarantee) was needed and would only be used to induce the Bank of Commerce to continue to honor checks drawn by Wagner against uncollected items and (2) that, given the SBA loan and Wagner's financial condition, no loans would be made *in futuro* to the corporate obligor. The guarantee, as delivered to the bank, also purported to bear the signature of coplaintiff Sondra Harris, which signature has been alleged to be a forgery. Thus, Sondra Harris alleges that the defendant either forged her name to the instrument or caused it to be forged and that the foregoing demonstrated a "wilful and malicious desire [on his part] to * * * harm and disgrace" her. Accordingly, and upon being sued by the bank, Ms. Harris claims to have suffered "anguish and embarrassment in light of her reputation as an attorney and otherwise", for which damages are demanded. For his part, the defendant has denied the material allegations of the complaint and maintains, *inter alia,* (1) that he asked Robert Harris to obtain his wife's signature on the guarantee, (2) that Robert Harris thereupon took possession of the document in question, and (3) that he (Harris) returned it to the bank several days later in its present form. In December of 1976 (subsequent to the execution of the guarantee in issue), the Bank of Commerce apparently lent Wagner a substantial sum of money, upon which the corporation ultimately defaulted. (According to the complaint, this loan was allegedly signed on behalf of the corporation by only *one* of its officers, in direct violation of the corporate resolution.) The bank thereupon commenced an action against the Harrises and others and was successful, *inter alia,* in obtaining summary judgment against Robert Harris on his guarantee. (The status of that action insofar as it regards the coplaintiff, Sondra Harris, does not appear.) This action is an outgrowth of that lawsuit. In our view, the complaint is legally insufficient and must therefore be dismissed. Beginning with the cause of action sounding in fraud, the complaint is deficient due to its failure to allege "justifiable reliance" on the part of the plaintiff Robert Harris, for while it is claimed, *inter alia,* that Harris relied upon defendant's representation that there would be no further loans to the corporate obligor, the complaint also recites (at paragraph "Eighth") "That the plaintiff * * * *consented to be[come] an accommodating signatory* of the guarantee described hereinabove *based upon the knowledge shared by him and the defendant* that Wagner was then party to a substantial Small Business Administration loan which *both* parties herein were then and at all times hereinafter mentioned aware *legally precluded* the Bank of Commerce from lending additional monies to Wagner" (emphasis supplied). Accordingly, "reliance" upon the representations attributed to the defendant is negated on the face of the pleading, as well as in the affidavit submitted in opposition to the defendant's motion wherein Harris avers: "It is here that my knowledge as an attorney led me to execute the guarantee in question. Were I a layman, I might question * * * what might happen with an instrument which is as broad and extensive on its face as this guarantee. *Because* the defendant

had demonstrated his recognition of the prohibition against further corporate loans [however] * * * *and because I knew* that he possessed in his files sufficient evidence of the S.B.A. loan's existence it was obvious to me that he *should have realized* that further loans to the corporation were *barred by law"* (emphasis supplied). It is well established that to recover in an action grounded upon fraud the plaintiff must be able to demonstrate "deception," i.e., that he relied upon the defendant's *representations* and that the foregoing was reasonable and justifiable under the facts of the particular case (see *Cudemo v Al & Lou Constr. Co.,* 54 AD2d 995; see, also, *Lanzi v Brooks,* 54 AD2d 1057, affd 43 NY2d 778). In addition, there is a further infirmity attending the first cause of action, for as the Third Department has observed: "Absent a present intent to deceive, a statement of future intentions, promises or expectations is not actionable on the grounds of fraud" *(Lanzi v Brooks, supra,* p 1058). Thus, in order to withstand dismissal, a complaint based upon a statement of future intent "must allege facts to show that the defendant, at the time the promissory representation was made, never intended to honor or act [up]on his statement * * * [and] any inference [merely] drawn from the fact that the [projected] expectation did not occur is not sufficient to sustain the plaintiff's burden" *(Lanzi v Brooks, supra,* p 1058). Upon our reading, the complaint in the instant case neither alleges that the defendant falsely stated his future intentions at the time that he made the statements in issue, nor contains any factual assertions from which the foregoing may be concluded. The second cause of action, being predicated on the first, must likewise fail, as it must, in any event, because a demand for punitive damages does not constitute a separate cause of action for pleading purposes (see, e.g., *M. S. R. Assoc. v Consolidated Mut. Ins. Co.,* 58 AD2d 858; *Ton-Da-Lay, Ltd. v State of New York,* 70 AD2d 742, 744, app dsmd 48 NY2d 629). Moreover, the record taken as a whole does not disclose that high degree of moral turpitude aimed at the public generally which would justify the imposition of punitive damages (see *Luxonomy Cars v Citibank, N. A.,* 65 AD2d 549, 551; see, also, *Empire State Fed. Sav. & Loan Assn. v Commercial Union Ins. Co.,* 67 AD2d 676; *M. S. R. Assoc. v Consolidated Mut. Ins. Co., supra).* Finally, as regards the cause of action pleaded by Sondra Harris, we find that the action sounds neither in fraud nor prima facie tort (cf. *Jo Ann Homes at Bellmore v Dworetz,* 25 NY2d 112, 119; *Cudemo v Al & Lou Constr. Co., supra,* p 995; *Squire Records v Vanguard Recording Soc.,* 25 AD2d 190, 191-192, affd 19 NY2d 797), and we are unable to concur in the conclusion of Special Term that an action in the nature of an intentional infliction of extreme emotional distress has been stated (see *Fischer v Maloney,* 43 NY2d 553, 557; *Nestlerode v Federal Ins. Co.,* 66 AD2d 504, 506-507, mot for lv to app den 48 NY2d 604). Rather, it is our view that the allegations of the instant complaint describe an action in the nature of defamation or, perhaps, false words causing special damages, and that however denominated it is time barred by virtue of the applicable one-year Statute of Limitations (CPLR 215, subd 3; *Clark v New York Tel. Co.,* 41 NY2d 1069, 1070, affg 52 AD2d 1030; *Morrison v National Broadcasting Co.,* 19 NY2d 453, 458-459; *Kartiganer Assoc. v Town of Newburgh,* 57 AD2d 857, 858, app dsmd 42 NY2d 974). Gulotta, J. P., Margett, O'Connor and Weinstein, JJ. concur.