J. Richard DiROSE, Plaintiff-Appellee,

v.

PK MANAGEMENT CORP., Nicholas A. DeMare, Frank Ciccarelli, John S. Russo, Harry Kursh, Anthony Curatolo and Jerome Dansker, Defendants-Appellants.

No. 1170, Docket 81–7669.

United States Court of Appeals, Second Circuit.

Argued May 21, 1982.

Decided Oct. 25, 1982.

Percival Oviatt, Rochester, N. Y. (Woods, Oviatt, Gilman, Sturman & Clarke, Rochester, N.Y., on the brief), for defendants-appellants.

Victor Fuzak, Buffalo, N. Y. (Hodgson, Russ, Andrews, Woods & Goodyear, and Allen H. Beroza, Buffalo, N.Y., on the brief), for plaintiff-appellee.

Before TIMBERS, VAN GRAAFEILAND and KEARSE, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

PK Management Corporation (PK) and Frank Ciccarelli appeal from a judgment of the United States District Court for the Western District of New York, Elfvin, J., entered upon a jury verdict in favor of appellee Richard DiRose in the amount of $892,282.33, and from Judge Elfvin's order denying appellants' motion for judgment n. o. v. or a new trial. For the reasons discussed below, we hold that appellants' motion for a new trial should have been granted and reverse with directions to grant a new trial.

In 1959, appellee opened a pizza and sandwich shop in Buffalo, New York. By 1975, appellee's pizza operation had expanded to a chain of eighteen stores, operating in leased premises and employing 250 people. The rapid expansion of appellee's enterprise created serious cash flow problems, however, and in 1975 appellee had great difficulty meeting his monthly obligations for rent and operating costs, which totaled around $18,000. During that year, he had a net loss of $109,871. For the first three months of 1976, his loss was $47,403. He was also seriously in debt. As a result of his financial difficulties, appellee became interested in subleasing or selling all or part of his business.

In August, 1975, a real estate broker introduced DiRose to appellant Frank Ciccarelli, the executive vice-president of PK, a public corporation which owned and operated several "Pizza Kitchen" restaurants in the Rochester, New York area. Ciccarelli undertook a thorough study of the DiRose operation in order to determine whether PK

and DiRose could work out a business deal. Over the next few months, the two men discussed several proposals for PK's acquisition of part of the DiRose chain. Although DiRose and Ciccarelli originally considered a purchase and sale transaction, the plan gradually evolved into one under which PK would sublease several of appellee's locations with the possibility of later taking over additional stores.

On February 4, 1976, appellee and Ciccarelli signed an agreement which, as amended on March 18, 1976, provided for the sublease of eleven of appellee's stores to PK. The contract provided that the subleases would run from March 1, 1976 to September 30, 1976, but PK reserved the option to terminate any sublease on one month's notice or to renew for additional six-month periods on the same terms as the original sublease. In addition, appellee appointed PK as his agent to renew the prime leases if PK decided to exercise its option to renew. PK was obligated under the agreement to pay appellee the amounts which he owed for store and equipment rental and to pay for utilities and ordinary repairs.

As authorized by the terms of the sublease agreement, PK assigned its interest in the stores to its wholly-owned subsidiary, Buffalo George Urban Corporation, which took over the operation of the stores on March 15, 1976. Appellee was hired as manager of the operation at a salary of $25,000 per year.

In August or September, 1976, PK decided not to renew any of the subleases. Ciccarelli informed appellee of the decision and indicated that appellee's employment would be terminated when the leases reverted to appellee. Ciccarelli suggested that appellee purchase the Buffalo George stock so that he might issue shares and raise the capital necessary to continue operating the restaurants. Ciccarelli indicated that his son-in-law, Anthony Curatolo, would be willing to become appellee's partner in the purchase and assist in raising capital.

On October 9, 1976, appellee and Curatolo signed a written agreement to purchase all the stock in Buffalo George for $10,000.

The sale was consummated on December 13, 1976. On that day, appellee executed a general release of PK and its officers for all liability arising out of the February agreement.

Things did not go well for appellee and Curatolo. In January, 1977, Curatolo withdrew from the business and, in July of that year, appellee disposed of the last of his stores. In June, 1978, appellee brought this action, claiming that he had been fraudulently induced to sign the February 4, 1976, agreement by Ciccarelli's oral promises that the subleased premises would be redecorated. In addition, appellee alleged that he was entitled to $30,000 for inventory that was in his stores when PK took them over. Other claims by appellee were dismissed in the court below and are not a subject of this appeal.

After a trial before Judge Elfvin, the jury returned a verdict for appellee in the amount of $362,000 compensatory damages and $500,000 punitive damages on the fraud claim and $30,282.33 on the inventory claim. Appellants' motions for judgment n. o. v. or for a new trial were denied by the district court and the matter is now before us for review. For several reasons, which are hereinafter discussed, we conclude that the judgment must be vacated and the matter retried.

## Discussion

■ Under New York law, a person who induces another to enter into a contract by making a promise which he has no intention of keeping may be held liable in damages for fraud. *Channel Master Corp. v. Aluminium Limited Sales, Inc.,* 4 N.Y.2d 403, 406–09, 176 N.Y.S.2d 259, 151 N.E.2d 833 (1958); *Sabo v. Delman,* 3 N.Y.2d 155, 160, 164 N.Y.S.2d 714, 143 N.E.2d 906 (1957). The essential elements of the injured party's cause of action are "representation of a material existing fact, falsity, *scienter,* deception and injury." *Channel Master Corp. v. Aluminium Limited Sales, Inc., supra,* 4 N.Y.2d at 407, 176 N.Y.S.2d 259, 151 N.E.2d 833. Because it is clear beyond peradventure that the jury's verdict on damages was

predicated on facts that were not in evidence and upon a misguided understanding of the applicable law, we will discuss that issue first.

## Damages

■ The district judge instructed the jury that appellee's damages on his fraud count should be measured by the value of the rights he gave up less the value of the rights he received in return. Thereafter, the judge narrowed this charge, telling the jury that what appellee lost was "the difference between the value of his eleven units as of March 18, 1976, and the value of the eleven or so which Buffalo George Urban had December 13, 1976." The charge as first given was correct. *Holm v. Shilensky,* 388 F.2d 54, 58 (2d Cir. 1968). As amended, the charge was faulty in that it did not take into account all the rights or benefits received by appellee, such as the assumption by appellants of appellee's $18,-000 monthly indebtedness and his salary as manager.

Moreover, appellee had produced no evidence as to the value of the stores on December 13, 1976. The testimony of appellee's expert witness, Leonard Dopkins, was that, in February, 1976, appellee's entire business was worth $362,100. Dopkins was not asked to evaluate the eleven subleased stores as of the time they were returned to appellee in December, 1976, and he did not do so. The jury's verdict on this claim was in the exact amount of the February appraisal, $362,100.

■ In denying appellants' motion for a new trial, the district judge attempted to explain away the prejudicial error which is obvious in this verdict, by stating that the burden of proving the value of the restaurants at the time they were returned was on the appellants. This was contrary to what the judge had charged the jury and is contrary to the law. *Toho Bussan Kaisha, Ltd. v. American President Lines, Ltd.,* 265 F.2d 418, 422 (2d Cir. 1959).

Assuming for the argument only that appellee's damages could have been measured solely by the value of his entire business in February, 1976, Dopkins failed to make a proper estimate of that value. Dopkins arrived at the figure of $362,000 by comparing appellee's individual entrepreneurship with the appellant PK, an over-the-counter, publicly held corporation. Dopkins assigned a value to PK, subtracted ten percent from that value because appellee's company was not publicly owned, and then discounted the remaining ninety percent another two-thirds so as to be "reflective of Mr. DiRose's different conditions". Obviously, if Dopkins did not start with a correct evaluation of PK, his entire appraisal was flawed.

■ In evaluating PK, Dopkins simply picked a price at which PK's shares had sold in over-the-counter transactions and multiplied this figure by the number of that company's outstanding shares. This simplistic method of appraisal did not meet the requirements of New York law. Appraisals under Section 623 of the New York Business Corporation Law (McKinney 1963) must be based on three factors: net asset value, investment (or earnings) value, and market value. *Matter of Endicott Johnson Corp. v. Bade,* 37 N.Y.2d 585, 587–90, 376 N.Y.S.2d 103, 338 N.E.2d 614 (1975). All three factors have to be considered. *Id.* Appraisals based solely upon over-the-counter stock prices are not sufficient. *Matter of Silverman,* 282 A.D. 252, 258–63, 122 N.Y.S.2d 312 (1953); *Matter of Kaufmann, Alsberg & Co. v. H. L. Green Co.,* 30 Misc.2d 1025, 1030–31, 220 N.Y.S.2d 151, *aff'd,* 15 A.D.2d 468, 222 N.Y.S.2d 305 (1961). The district court should not have accepted such an appraisal in this case.

■ We conclude also that Dopkins inadequately explained and supported the substantial adjustments in value which he made as between appellee's company and PK. A publicly held corporation worth three or four times a privately held company is not an ideal comparable of the latter. *See Latham Holding Co. v. State,* 16 N.Y.2d 41, 45, 261 N.Y.S.2d 880, 209 N.E.2d 542 (1965). Because substantial adjustments have to be made, the expert witness must

explain the factors upon which he based his judgment. *Matter of Taylor v. State,* 39 A.D.2d 984, 985, 333 N.Y.S.2d 497 (1972). Adjustments which rest upon conclusory and subjective opinions will not suffice. *Morio v. State,* 34 A.D.2d 845, 846, 310 N.Y.S.2d 338 (1970). They cannot be, as Dopkins conceded they were in the instant case, "something that [he] dreamed up."

■ Appellee's proof of damages on the fraud count was also deficient in that Dopkins based his appraisal on appellee's entire business, not simply the eleven stores that PK subleased.

For all of the foregoing reasons, the damage award must be vacated. *Astles v. Quaker City Bus Co.,* 158 F.2d 979, 980 (2d Cir. 1947); *Slater v. KFC Corp.,* 621 F.2d 932, 937–38 (8th Cir. 1980). It does not follow, however, that appellee's complaint must be dismissed. In the exercise of our discretion, we think it better that the matter be remanded for a new trial so that appellee may have an opportunity to furnish the proof that is lacking. *See Slaughter v. Philadelphia National Bank,* 417 F.2d 21, 33 (3d Cir. 1969). Because we are troubled in several respects by the jury's verdict on liability, we will not limit the retrial to the issue of damages but will order that the entire case be retried. *Id. See also Caskey v. Village of Wayland,* 375 F.2d 1004, 1009–10 (2d Cir. 1967).

### The Fraudulent Conduct

In determining whether appellants were guilty of fraud, a fundamental question was Ciccarelli's state of mind at the time he allegedly promised to remodel appellee's store. Ciccarelli's state of mind was a fact, concerning which he might make a fraudulent representation. *Deyo v. Hudson,* 225 N.Y. 602, 612, 122 N.E. 635 (1919). Appellee's proof that Ciccarelli had no intention of remodeling at the time he allegedly promised to do so was far from overwhelming. PK's corporate minutes show that its directors did discuss the remodeling of three of the stores, and plans that were prepared for the remodeling were introduced into evidence. Mr. DeMare, PK's president, testified that the remodeling did not take place because the sales volume in the stores was not sufficient to justify it. One explanation of why the jury reached the verdict it did may be found in the court's charge.

■ A well-accepted principle of law is that "[f]raud includes the pretense of knowledge when knowledge there is none." *Ultramares Corp. v. Touche, Niven & Co.,* 255 N.Y. 170, 179, 174 N.E. 441 (1931). This principle finds expression in the charge often given that a defendant may be guilty of fraudulent misrepresentation for making a false statement without knowing it to be false, if he made it recklessly with the pretense of knowledge that it was true when in fact he knew that he had no such knowledge. *See* New York Pattern Jury Instructions 682 (1968). To be guilty of fraud in this manner, the speaker must know that he has no knowledge on the subject concerning which he speaks. 37 C.J.S. Fraud § 21(b), at 258 (1943).

■ The district court instructed the jury that "[a] promise is false if at the time it was made, the person making the promise has [sic] no intention of performing or carrying it out." Mr. Ciccarelli's intent or state of mind when he made the alleged promise obviously was a matter concerning which he had knowledge. Nevertheless, the district court went on to instruct the jury that if Ciccarelli "made the representations recklessly without knowledge of whether they were true", the jury's finding would be that there was an intent to deceive. This charge could only have confused the jury and, in the setting of this case, was improper.

■ The court also charged that events occurring after the promise was made might provide evidence to the jury of the intent with which the promise was made. In the light of the "recklessness" charge just discussed, this statement, made without embellishment or reservation, was prejudiciously erroneous. Under New York law, "any inference drawn from the fact that the expectation did not occur is not

sufficient to sustain the plaintiff's burden of showing that the defendant falsely stated his intentions." *Lanzi v. Brooks,* 54 A.D.2d 1057, 1058, 388 N.Y.S.2d 946 (1976), *aff'd,* 43 N.Y.2d 778, 402 N.Y.S.2d 384, 373 N.E.2d 278 (1977), *quoted in Harris v. Camilleri,* 77 A.D.2d 861, 863, 431 N.Y.S.2d 65 (1980). As former Judge Smith of this Court stated in his customary succinct fashion, "actionable fraud depends on more than a showing of non-performance." *Perma Research and Development Co. v. Singer Co.,* 410 F.2d 572, 576 (2d Cir. 1969). The jury should have been so instructed. The jury's license to consider both recklessness and nonperformance as indicative of Ciccarelli's state of mind could only have resulted in prejudice to the appellants.

### The Release

On the fourth day of the trial, the district court permitted appellee, over appellants' objection, to amend his complaint to add several additional charges of fraud, including an allegation that he was promised a job as manager of the subleased stores at an annual salary of $25,000. The sublease, it will be recalled, was for a six-month, renewable term, which, in fact, was not renewed.

 Buffalo George Urban Corporation, PK's wholly-owned subsidiary and its assignee under the sublease agreement, hired appellee at the agreed salary. However, when the sublease terminated and appellee and Anthony Curatolo became the owners of Buffalo George, appellants' obligation under the alleged oral hiring agreement also terminated. Giving the alleged hiring agreement the broadest possible interpretation, the parties could not have intended that appellee's employment as manager of the subleased stores would extend beyond the expiration of the sublease. Moreover, New York law is clear, that, unless a definite period of time is specified in an employment contract, the hiring is at will. *Watson v. Gugino,* 204 N.Y. 535, 541, 98 N.E. 18 (1912); *Walford v. British Caledonian Airways,* 52 A.D.2d 922, 383 N.Y.S.2d 401 (1976).

Despite the foregoing, appellee argued successfully in the court below that concern over the loss of his job and the salvaging of his business induced him to sign the release of the claims asserted herein and constituted duress which avoided the release. We conclude, however, that the jury's finding of duress was against the great weight of the evidence, and resulted, in part at least, from inadequacies in the district court's charge.

 Appellants requested the district judge to instruct the jury in accordance with the New York law on the terminability of employment agreements, but the judge refused to do so. Moreover, the judge failed to make it clear to the jury that, under New York law, threats to enforce a party's legal rights do not constitute duress. *Stewart M. Muller Construction Co. v. New York Telephone Co.,* 40 N.Y.2d 955, 956, 390 N.Y.S.2d 817, 359 N.E.2d 328 (1976); *Avey v. Town of Brant,* 263 N.Y. 320, 322, 189 N.E. 233 (1934). The jurors could not intelligently consider appellee's claim of duress without knowing what appellants' rights were. The district court's failure to tell them was extremely prejudicial to appellants.

There is another facet to appellee's claim of duress which to this date has not been discussed or considered. Appellee, who was represented by an attorney, signed the contract to purchase Buffalo George on October 9, 1976, and agreed therein to deliver a general release to appellants on the closing date, which was delayed until appellee could secure a liquor license. On December 13, 1976, after the liquor license had been secured, appellee executed the release in the presence of his attorney. He resumed possession and control of the subleased restaurants and made no complaint of duress until after he had commenced this action on June 22, 1978.

 A contract or release, the execution of which is induced by duress, is voidable, not void, and the person claiming duress must act promptly to repudiate the contract or release or he will be deemed to have

waived his right to do so. *Joseph F. Egan, Inc. v. City of New York,* 17 N.Y.2d 90, 98, 268 N.Y.S.2d 301, 215 N.E.2d 490 (1966); *Leader v. Dinkler Management Corp.,* 26 A.D.2d 683, 272 N.Y.S.2d 397 (1966), *aff'd,* 20 N.Y.2d 393, 283 N.Y.S.2d 281, 230 N.E.2d 120 (1967); *Powell v. Oman Construction Co.,* 25 A.D.2d 566, 267 N.Y.S.2d 862 (1966); *Feyh v. Brandtjen & Kluge, Inc.,* 1 A.D.2d 1014, 151 N.Y.S.2d 454 (1956), *aff'd,* 3 N.Y.2d 971, 169 N.Y.S.2d 38, 146 N.E.2d 794 (1957); *Port Chester Electrical Construction Corp. v. Hastings Terraces, Inc.,* 284 A.D. 966, 967, 134 N.Y.S. 656 (1954). Under the authority of the above cases, it would appear that appellee waived his right to claim duress. However, since this contention was not urged in the trial court, we will not pass upon it here, but will permit the district court to do so upon remand. Unless appellee comes forward with a compelling reason for his lengthy delay in repudiating the release, the district court is directed to dismiss appellee's claims on the law.

### The Inventory

 The jury's award of $30,282.33 on appellee's claim of damages for unreturned inventory must also be vacated. Putting aside the question whether appellee's general release covered this claim, there was a total absence of proof as to what part of the inventory was kept and what part was returned and the value of each part. The district court stated in its charge that there was "a great uncertainty dearth evidence [sic] in that regard", and that there were "inadequacies of proof as to the value at the start and the value at the end." We agree.

### The Punitive Damage Award

Since we are directing that there be a trial de novo, we vacate the award of punitive damages. In so doing, we have given no consideration to the propriety per se of the award.

### Disposition

The judgment in favor of appellee and against appellant PK Management Corpo-

ration and Frank Ciccarelli is reversed in its entirety and the matter is remanded to the district court with instructions to grant a new trial.

DiRose and Ciccarelli both reside in Florida and PK is a Rochester corporation now proceeding in bankruptcy before the Bankruptcy Court in Rochester. Under all the circumstances we think it better that the case be transferred to Rochester for retrial before another district judge. It is so ordered.