George **KOVIAN**, Hibjay Corp., Kelly Lumber Company, Inc., through its Trustees in Bankruptcy, Richard H. Weiner, Stephen Barker, Alfred Cheney, Gamray Technology, Inc., Columbia Rentals of Gloversville, Inc., Nagaho Construction Corp., Peter Gamaldi, and Patricia Gamaldi, Plaintiffs,

v.

The **FULTON COUNTY NATIONAL BANK AND TRUST COMPANY,** Charles Moyses, John Valerius, Vincent Salluzzo, Robert Salluzzo, Gleason and Salluzzo, Adirondack Homesites, Inc., Capital Medical Leasing Corporation, Hoye & Hoye, Theodore E. Hoye, Jr., and Charles Pratt, Defendants.

No. 86–CV–154.

United States District Court, N.D. New York.

July 13, 1994.

---

Oliver & Oliver, Albany, NY (Lewis B. Oliver, of counsel), for plaintiffs.

Hiscock & Barclay, Syracuse, NY (Thomas S. Brett and Judith M. Sayles, of counsel), for defendant Fulton County Nat. Bank and Trust Co.

Lomanto & Jung, Gloversville, NY (Edward S. Lomanto, of counsel), for defendant Charles Moyses.

James C. Hayes, Amsterdam, NY, for defendant John Valerius.

Lombardi, Reinhard, Walsh & Harrison, Albany, NY (Richard P. Walsh, of counsel), for defendants Vincent Salluzzo, Adirondack Homesites, Inc. and Capital Medical Leasing Corp.

Carter, Conboy, Bardwell, Case, Blackmore & Napierski, Albany, NY (John J. Phelan, III, of counsel), for defendants Robert Salluzzo and Gleason and Salluzzo.

Roche, Corrigan, McCoy & Bush, Albany, NY (Scott W. Bush, of counsel), for defendants Hoye & Hoye and Theodore E. Hoye, Jr.

Menter, Rudin & Trivelpiece, Syracuse, NY (Gerald J. Matthews, of counsel), for defendant Charles Pratt.

## MEMORANDUM–DECISION & ORDER

MUNSON, Senior District Judge.

Before the court is a motion by defendant Charles Pratt for summary judgment pursuant to Federal Rule of Civil Procedure 56, dismissing as against him the claims of plaintiffs Hibjay Corporation, Stephen Barker, Alfred Cheney, and Kelly Lumber Company. Defendant Pratt further moves for costs and attorney's fees. Plaintiffs cross-move for sanctions pursuant to Federal Rule of Civil Procedure 11.

### I. BACKGROUND

Plaintiffs' second amended complaint ("complaint") alleges four claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968. The complaint alleges illegal lending activities by defendant Fulton County National Bank and Trust Company ("the Bank"), as demonstrated by three distinct schemes to defraud plaintiffs. Defendant Pratt was President of the Bank, and defendant Moyses was Vice–President, at the time of the alleged schemes. Both are purportedly tied to the Bank's unlawful activities.

Defendant Pratt's involvement in the alleged wrongs is limited to the "Hibjay scheme," one of the three schemes described by plaintiffs.[1] That scheme relates to plaintiffs Stephen Barker and Alfred Cheney and their plaintiff companies, Hibjay Corporation ("Hibjay") and Kelly Lumber Company ("Kelly Lumber"). Because the facts underlying the Hibjay scheme and the case in general are well documented elsewhere, the court presumes familiarity with the background of this action. *See Kovian v. Fulton County Nat'l Bank & Trust Co.,* 647 F.Supp. 830 (N.D.N.Y.1986) (*"Kovian I"*); Memorandum–Decision and Order, filed March 28, 1990, Document ("Doc.") 59 (*"Kovian II"*).

---

1. For an in-depth discussion of the first, or "Kovian scheme" the reader is referred to *Kovian v.* *Fulton County Nat'l Bank & Trust Co.,* 647 F.Supp. 830, 832–34 (N.D.N.Y.1986).

Therefore only those facts directly relevant to the pending motions will be set forth in this Memorandum–Decision and Order.

As alleged in the complaint, Hibjay was founded by plaintiffs Barker and Cheney in February 1982, for the purpose of undertaking the rehabilitation and renovation of low income properties. According to plaintiffs Barker and Cheney, the idea to initiate the business originated with defendant Moyses. Plaintiffs had encountered Moyses while obtaining financing from the Bank for the expansion of plaintiff Kelly Lumber. Moyses encouraged Barker and Cheney to found Hibjay by promising to locate a purchaser for their first renovation project, known as the "Hibbard Street building."

The alleged conspiracy began during the construction of the Hibbard Street building. Moyses secured signed, blank promissory notes from plaintiffs, which he filled in when either plaintiff sought a construction draw. Often Moyses would enter Pratt's office prior to completing the form, and would return to his own desk to fill in an amount in excess of that which Barker and Cheney requested. Barker and Cheney claim they did not realize at the time that these excess amounts represented kickbacks, as they now allege.

This same procedure was followed in Hibjay's second project, the renovation of the Masonic Temple building in Gloversville, New York (the "Temple project"). Hibjay borrowed approximately $428,213.00 from the Bank in order to finish the Temple project. The Temple Building was owned by an individual named Kenneth Keith, who had purchased the property with money borrowed from the Bank. The Bank maintained a mortgage on the property to secure the Keith loan. Although plaintiffs Barker and Cheney knew that Keith had reached his lending limit on loans from the Bank, they continued to borrow money to finance the Temple Project. In so doing they relied on representations by Moyses and Pratt, who assured them that the Bank would locate someone to purchase the structure from Keith.

The Temple Building was purchased from Keith by Temple Associates in June 1983. Subsequently, Temple Associates evicted Hibjay from the premises, whereupon Hibjay filed a mechanics lien against Temple Associates for the amount of $615,703.45. According to plaintiffs, Moyses and Pratt then attempted to coerce Barker and Cheney into assigning the lien to the Bank by making a variety of promises and threats. They promised to cancel the debt Hibjay incurred in renovating the Temple Building, to return to Hibjay any money in excess of that amount, to finance the "Brower Block project", which was another renovation project initiated by Hibjay, and to help obtain the support of the Bank in the recovery of the financially ailing Kelly Lumber, which was owned by Barker and Cheney. Further, plaintiffs allege that defendants Pratt and Moyses threatened to withhold future loans and to call in all existing loans if Hibjay refused to assign the lien. In response to the promises and threats of defendants Pratt and Moyses, Hibjay, through Barker and Cheney, agreed to assign the mechanics lien to the Bank.

The Bank then instituted an action in state court to foreclose on the Temple Building mortgage and to collect on the lien. Although the Bank thereby received funds in excess of the amount owed by Hibjay, it failed to refund any money to Hibjay. Further, the Bank reneged on its promises to finance future Hibjay projects and to assist in the financial recovery of Kelly Lumber, which subsequently filed for bankruptcy. The Bank also refused to allow the lien to cancel the Hibjay debt unless Barker and Cheney agreed to sign a release and covenant not to sue (jointly referred to as "the release"), pursuant to which they waived all claims which Barker, Cheney or Hibjay might have against the Bank with relation to the Temple project. On October 2, 1984 Barker and Cheney signed such a release, and it is that release which forms the basis of defendant Pratt's motion for summary judgment against Hibjay, Barker and Cheney.

## II. DISCUSSION

Before turning to the specific arguments raised by the parties, the court will recount the familiar standards to be applied to a motion for summary judgment.

Under Federal Rule of Civil Procedure 56 summary judgment shall enter if, when viewing the evidence in the light most favorable to the nonmovant, the court determines that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Eastman Kodak Co. v. Image Technical Servs., Inc.,* —— U.S. ——, ——, 112 S.Ct. 2072, 2077, 119 L.Ed.2d 265 (1992); *Commander Oil v. Advance Food Serv. Equip.,* 991 F.2d 49, 51 (2d Cir.1993). Where the moving party does not bear the ultimate burden of proof on an issue, that party satisfies its summary judgment burden by pointing to the absence of evidence to support an essential element of the non-moving party's claim. *Consarc Corp. v. Marine Midland Bank, N.A.,* 996 F.2d 568, 572 (2d Cir.1993). Where the movant does shoulder the burden of proof, it must establish that there is no genuine issue of material fact to be decided regarding any element of that party's claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In either case, if the movant satisfies its initial summary judgment burden, then the burden shifts to the nonmovant to proffer evidence demonstrating that a trial is required because a disputed issue of material fact exists. *Weg v. Macchiarola,* 995 F.2d 15, 18 (2d Cir.1993). To survive the motion for summary judgment the nonmovant must do more than present evidence that is merely colorable, conclusory, or speculative, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), and furthermore must show more than "some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). In other words, the nonmovant must demonstrate that there are issues of fact that must be decided by a factfinder, because "they may reasonably be decided in favor of either party." *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990).

With these fundamental precepts in mind, the court turns to the substance of the motions at bar. The court first will address defendant Pratt's motion for summary judgment as it relates to plaintiffs Hibjay, Barker and Cheney.

## A. Summary Judgment against Hibjay, Barker and Cheney

The October 2, 1984 release signed by Barker and Cheney on behalf of Hibjay is the basis for defendant Pratt's motion for summary judgment against plaintiffs Barker, Cheney and Hibjay. Under the release plaintiffs agreed to waive any and all claims against the Bank and its officers and agents arising out of the Temple project "from the beginning of the world" until October 2, 1984. Release, Exhibit ("Exh.") 2A attached to Wood Affidavit, Doc. 102. In return the Bank released Hibjay from all liability as maker of the Notes, released Barker and Cheney from the terms of the Guaranty of the Notes, and waived its right to sue Barker and Cheney for any liability arising out of the Guaranty. *Id.*

In their complaint, plaintiffs allege that the release is void as a matter of law. First, plaintiffs aver that defendants fraudulently induced plaintiffs into assigning the mechanics lien to the Bank. At the time of the assignment, plaintiffs allege, defendants had no intention of financing the Brower Block project or assisting in the financial recovery of Kelly Lumber. Second Amended Complaint, Doc. 41, at ¶¶ 176–77. Nor did the bank intend to honor its prior agreement to apply the proceeds from its foreclosure on the lien to Hibjay's debt with the Bank. *Id.* at ¶ 182. Plaintiffs next allege that defendants exploited the fraudulently procured assignment of the lien by forcing plaintiffs Hibjay, Barker and Cheney to enter into the release. According to plaintiffs, defendants' prior fraud left plaintiffs in no position to decline to sign the release, because defendants refused to cancel plaintiffs' bank debt unless they did so. *Id.* at ¶ 187. Plaintiffs were advised by their attorney, defendant Theodore E. Hoye, Jr. of the defendant law firm Hoye & Hoye, that they must sign the release if they wanted Hibjay's debt to be cancelled by the Bank. *Id.* at ¶ 188. It was only because of defendants' improper actions, plaintiffs assert, that the release was executed. Plaintiffs charge that the fraudulently induced assignment and the duress-induced release were part of a scheme by defendants

to force plaintiffs to turn over to the Bank the mechanics lien, which enabled the Bank to use the mechanics lien for its own benefit.

In his motion for summary judgment dismissing the claims of Hibjay, Barker and Cheney, defendant Pratt argues that there is no genuine issue of material fact concerning the validity of the October 2, 1984 release, because there is no question but that the release was not obtained through any duress other than that caused by plaintiffs' economic weakness. Thus, defendant argues, the release bars the instant claims by Hibjay, Barker and Cheney. Defendant Pratt's Memorandum of Law, Doc. 98, at 6. In the alternative defendant argues that, even if a material question of fact exists as to duress, there is no material question on the issue of ratification. Because plaintiffs accepted the benefits of the release without renouncing it or seeking an early judicial declaration of its invalidity, defendant argues, plaintiffs are barred from now seeking to void the release. Defendant further argues that plaintiffs' defense to the release of duress by fraud is barred by the doctrines of estoppel and waiver. Finally, defendant argues that plaintiffs fail to plead fraud with particularity, as required by Fed.R.Civ.P. 9(b).

In opposition to defendant's motion, plaintiffs Hibjay, Barker and Cheney argue that material questions of fact exist as to the scope and validity of the release. Plaintiffs contend that the release was obtained as part and parcel of the Hibjay scheme in order to protect defendant Pratt from liability. Because the release was obtained through duress, plaintiffs assert, it should be declared void. Plaintiffs further argue that they never intended to ratify the release, and that the complaint pleads fraud with sufficient particularity to satisfy Fed.R.Civ.P. 9(b).

### 1. Duress

■ The court first addresses the issue of duress. Under the federal common law of release,[2] plaintiffs must establish three elements in order to show economic duress sufficient to make the release voidable: (1) plaintiffs involuntarily accepted defendants' terms; (2) circumstances permitted no alternative to acceptance of defendants' terms; and (3) the circumstances were the result of coercive acts by defendants. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1482 n. 27 (6th Cir.1989); *Oskey Gasoline & Oil Co. v. Continental Oil Co.*, 534 F.2d 1281, 1286 (8th Cir.1976).

■ Because plaintiffs challenge the enforceability of the release on the ground of duress, they bear the ultimate burden of proof to show that duress existed. Defendant Pratt's burden in moving for summary judgment is merely to demonstrate that there is an absence of evidence to support an essential element of plaintiffs' claim that the release is unenforceable. Defendant attempts to meet his burden by arguing that none of the three required elements of duress are present in the instant case.

Defendant first argues that there is no question of material fact on the issue of voluntary acceptance. According to defendant, plaintiffs sought and received legal advice before signing the release, and received adequate consideration in exchange for their decision to release defendant from any claims arising out of the Temple project, namely the release by the Bank for plaintiffs' debt of $458,213.00.

Plaintiffs respond that the Bank had a pre-existing duty to cancel Hibjay's debt. That duty arose out of the Bank's promise to cancel Hibjay's debt with lien proceeds once the lien was assigned to the Bank by plaintiffs, and to apply excess proceeds to Hibjay's benefit. Thus the only "consideration" furnished by the Bank in exchange for the release was a threat to withhold monies already owed to plaintiffs. Further, plaintiffs argue, the mere fact that plaintiffs were represented by counsel does not establish that the release was signed voluntarily.

---

**2.** In *Kovian II*, the court determined that federal common law applies to the present dispute regarding the validity of the October 2, 1984 release. Doc. 59, at 27. That determination was premised on the well-settled principle that federal law controls the validity of a release of a federal cause of action. *Locafrance U.S. Corp. v. Intermodal Sys. Leasing, Inc.*, 558 F.2d 1113, 1115 (2d Cir.1977); *see Lumpkin v. Envirodyne Indus.*, 933 F.2d 449, 457 (7th Cir.1991); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1481 (6th Cir.1989).

Viewing the evidence in a light most favorable to plaintiffs, the court concludes that a material question of fact exists on the issue of whether plaintiffs signed the release voluntarily. Because the parties dispute whether the Bank promised to apply the lien proceeds to Hibjay's debt in return for Hibjay's assignment of the mechanics lien, it can not be held as a matter of law that the release was freely bargained for by plaintiffs. *Compare* Wood Affidavit, Doc. 102, at ¶ 7 ("the Bank ... demanded and received ... an assignment of the mechanics lien") *with* Barker Affidavit, Exh. 1 attached to Doc. 105, at ¶¶ 10, 13 ("Moyses promised ... that excess lien proceeds would be Hibjay's" and "based on the Bank's promises we assigned the lien") *and* Cheney Affidavit, Exh. 2 attached to Doc. 105, at ¶¶ 10, 13 (same).

■ Further, while plaintiffs were represented by counsel at the time the release was executed, and admit that they discussed the release with counsel, these facts alone do not preclude the possibility that plaintiffs were acting as a result of defendants' threats rather than their own free will. *See Citibank, N.A. v. Real Coffee Trading Co.*, 566 F.Supp. 1158, 1164 (S.D.N.Y.1983) (party not precluded from alleging fraud in the inducement merely because during the negotiations his counsel, unaware of the fraud, advised that the contract was valid (applying New York law)). Significantly, plaintiffs' counsel at the time of the release is a named defendant in this case, and plaintiffs allege that his actions were part the scheme to obtain the mechanics lien.

As noted by the Second Circuit, "[t]he district court is charged upon a motion for summary judgment with determining whether there is sufficient evidence to sustain a verdict for the nonmoving party; it should not weigh the evidence and resolve factual issues raised." *Eye Assocs., P.C. v. IncomRx Systems, Inc.*, 912 F.2d 23, 26 (2d Cir.1990); *see Murphy v. Provident Mutual Life Ins. Co.*, 923 F.2d 923, 930 (2d Cir.1990) (Kearse, J., dissenting) ("Any weighing of the evidence is the prerogative of the finder of fact, not an exercise of the court on summary judgment."), *cert. denied,* —— U.S. ——, 112 S.Ct. 65, 116 L.Ed.2d 40 (1991). The contra-

dictory versions of events contained in various affidavits leads the court to conclude that the issue of whether the release was voluntarily executed will largely be decided based upon the credibility of the parties. Whatever truth can be gleaned from their conflicting testimony must be divined by a jury, and not by the court on this motion.

On the second element of the duress test, whether plaintiffs had any alternatives to signing the release, defendant contends that plaintiffs could have brought an action for fraud at or about the time the release was signed. Plaintiffs did not seek any relief for the alleged fraud in the assignment of the lien until January, 1987, two and one-half years after they signed the release. Defendant concludes that the release should be upheld because plaintiffs had an adequate legal remedy for fraud available to them but chose instead to enter into a mutual release with the Bank.

■ Plaintiffs admit that they knew on October 2, 1984 that the Bank's July 1983 promises would not be honored. However, plaintiffs deny knowing on October 2, 1984 that the promises were false **when made,** and therefore argue that they did not know they had an action for fraud. In support of their claim, plaintiffs again offer their own affidavits, which state categorically that they did not know on October 2, 1984 that they had any legal claim against the Bank, whether for fraud or under the RICO statute. Barker Affidavit, Exh. 1 attached to Doc. 105, at ¶¶ 21–22; Cheney Affidavit, Exh. 2 attached to Doc. 105, at ¶¶ 21–22. Plaintiffs further offer the affidavit of Edward Kane, who served as Vice President of Hibjay beginning in 1982. Kane Affidavit, Exh. 3 attached to Doc. 105, at ¶ 3. Like plaintiffs Barker and Cheney, Kane disavows knowing of any potential legal remedy on October 2, 1984. *Id.* at ¶ 13. Finally, plaintiffs refer to the affidavit of Donald Brass, which was offered by defendant in support of his motion for summary judgment. Brass became Senior Loan Officer at the Bank on October 3, 1983. Brass Affidavit, Doc. 100, at ¶ 2. According to Brass, by September 1984, the Bank strongly suspected that plaintiffs Barker and Cheney were paying kickbacks to

defendant Moyses on Hibjay's loans. *Id.* at ¶ 3. Thus when plaintiffs Barker and Cheney approached Brass to ask whether the Bank was still interested in financing the Brower Block project, Brass notified them that the Bank "was *no longer* interested in financing the Brower Project." *Id.* at ¶ 7 (emphasis added). This statement indicates that the Bank once was interested in following through on its promises to plaintiffs.

The court concludes that a material question of fact exists as to when plaintiffs became aware that they had a claim against the Bank, whether in fraud or pursuant to the federal RICO statute. A jury, viewing the evidence in a light most favorable to plaintiffs, could reasonably find that plaintiffs were unaware of any legal remedies available to them in October 1984, and that they therefore had no alternative but to sign the release as demanded.

As for the third element of duress, defendant argues that he did not engage in any oppressive or wrongful conduct that could give rise to a claim of duress. According to defendant, the Bank did nothing more than threaten to do what it was legally entitled to do when it called in the Hibjay loans and the personal guaranties of Barker and Cheney. Barker and Cheney, represented by counsel, opted for a mutual release in the face of these perfectly legitimate legal options.

■ Defendant Pratt's argument again fails. If, as plaintiffs aver, the Bank threatened to call plaintiffs' $458,213.00 loan, which it had previously promised to resolve in exchange for the assignment of the mechanics lien, then the release was arguably retained as a result of fraud and duress. Once again the resolution of this issue depends upon an assessment of conflicting versions of events. That assessment must be made by a jury.

Defendant has failed to meet his summary judgment burden with regard to plaintiffs' duress argument, because he has failed to demonstrate an absence of evidence to support an essential element of such a claim. Accordingly, in so far as defendant Pratt's motion for summary judgment dismissing the claims of Hibjay, Barker and Cheney is based upon the issue of duress, the motion is denied.

## 2. *Ratification*

Defendant next argues that, even assuming that questions of fact exist concerning the issue of duress, there is no question that plaintiffs ratified the release by accepting its benefit, namely that plaintiffs would not be sued on the promissory notes, which they had personally guaranteed. Defendant Pratt's Memorandum of Law, Doc. 98, at 10. Apart from accepting its benefit, plaintiffs never renounced the release. According to defendant, plaintiffs were aware of allegations of fraud leveled at defendant both before and after they signed the release. Defendant asserts that plaintiffs easily could have renounced the release, and that failure to do so signifies ratification. In response, plaintiffs argue that the release was not ratified because plaintiffs never intended to ratify the release, and moreover that the underlying duress which forced plaintiffs to sign the release was never removed. Plaintiffs' Memorandum of Law in Opposition to Summary Judgment, Doc. 107, at 22, 26.

■ A contract executed under duress is not per se void, but merely is voidable. *Barnette v. Wells,* 270 U.S. 438, 444, 46 S.Ct. 326, 328, 70 L.Ed. 669 (1926); *DiRose v. PK Management Corp.,* 691 F.2d 628, 633 (2d Cir.1982); Restatement (Second) of Contracts § 175. Thus, once the duress is removed, the party claiming duress must choose either to promptly repudiate the contract or to acquiesce to its terms pursuant to the doctrine of ratification. *Barnette,* 270 U.S. at 444, 46 S.Ct. at 328; *DiRose,* 691 F.2d at 633–34. In order to ratify a contract obtained under duress, the duress must be removed and the aggrieved party must intend to ratify the contract. *Gallon v. Lloyd–Thomas Co.,* 264 F.2d 821, 825–26 (8th Cir. 1959); *United States v. McBride,* 571 F.Supp. 596, 613 (S.D.Tex.1983). Intention to ratify may be signified in many ways, including intentionally accepting benefits under the contract, remaining silent or acquiescing in the contract for a long period of time after an opportunity exists to have it declared void, or acting upon the contract by affirmatively acknowledging it or performing under it. *McBride,* 571 F.Supp. at 613.

In the instant case, there is no question that the duress of which plaintiffs complain was removed when the release was signed. Plaintiffs assert in contradictory terms that the duress which underlay the release was never removed, because if "plaintiffs had sought rescission of the release prior to the commencement of this RICO action, then the rescission would have reinstated the Hibjay debt and the Barker and Cheney guarantees [sic] so that plaintiffs would have faced the same financial ruin which they sought to avoid by signing the release." Plaintiffs' Memorandum of Law in Opposition to Summary Judgment, Doc. 107, at 24. In essence, plaintiffs' argument is not that the duress was never removed, but that the duress would be **renewed** if plaintiffs successfully maintained an action for rescission of the release. This argument does not suffice to preclude ratification. The duress plaintiffs complain of consisted of the Bank's power to call in the Hibjay debt and to enforce the guaranties signed by plaintiffs Barker and Cheney. Once the release was signed the duress was removed, because the release acted to discharge Hibjay's debt to the Bank and release Barker and Cheney from any personal liability for Hibjay's debt. Plaintiffs therefore were free to sue for rescission of the release based on duress, and for fraud or breach of contract based on the assignment of the lien.

Nonetheless, the court holds that there is a question of material fact concerning the issue of plaintiffs' intent to ratify the release. If, as plaintiffs claim, the cancellation of the Hibjay debt was a pre-existing duty of the Bank, then plaintiffs can not be said to have maintained any benefit from the release during the two and one-half years between the execution of the release and the filing of the instant complaint. Because the court has determined that plaintiffs' claim that the Bank already owed plaintiffs a duty to cancel the debt is a question of fact for the jury, the court can not hold as a matter of law that plaintiffs intended to ratify the release by retaining its benefits, no matter how long plaintiffs waited before bringing the instant action.[3]

In sum, assuming for the sake of argument that plaintiffs signed the release under duress, a genuine issue of material fact nonetheless remains concerning whether plaintiffs subsequently ratified the release through their actions. Therefore, in so far as defendant Pratt's motion for summary judgment against Hibjay, Barker and Cheney is based upon the issue of ratification, the motion is denied.

### 3. *Pleading Fraud with Particularity*

Finally, defendant contends that plaintiffs have failed to allege fraud with particularity as required by Fed.R.Civ.P. 9(b). In *Kovian II*, Doc. 59, at 55, the court expressly held that plaintiffs pled fraud with particularity as against defendant Pratt with regard to the Hibjay scheme, and that the complaint therefore satisfied Rule 9(b). Defendant contends that in making its decision the court limited its inquiry to only one element that must be pled with particularity, that of intent. According to defendant, two other elements must be stated with specificity to satisfy Rule 9(b): (1) the time, place, speaker, and content of the alleged fraudulent statement; and (2) whether the mails and wires were used. Defendant asserts that neither of these elements are pled with particularity in plaintiffs' second amended complaint, and concludes that summary judgment dismissing plaintiffs' fraud claim against him therefore is appropriate. Defendant Pratt's Memorandum of Law, Doc. 98, at 27–31.

In response, plaintiffs contend that defendant is barred in the context of a summary judgment motion from seeking reconsideration of the court's ruling on the sufficiency of the pleadings. The court agrees. Defendant is precluded from moving for summary dismissal based upon a failure to plead with particularity because this issue was fully and fairly decided in *Kovian II*. The court's ruling that the fraud was pleaded with sufficient particularity is the law of the case, and even assuming that defendant is correct in his charge that the court failed to consider

---

**3.** The same logic precludes the court from granting defendant's motion for summary judgment based on the theory of estoppel.

relevant factors in its analysis, the proper procedure to challenge such an error is through a motion to reconsider under Local Rule 10(m) of the Rules of Practice for the Northern District of New York. Therefore, in so far as defendant Pratt's motion for summary judgment against Hibjay, Barker and Cheney is predicated upon his argument that plaintiffs failed to plead fraud with particularity, his motion is denied.

Because genuine, material issues of fact remain as to the enforceability of the October 2, 1984 release, and because plaintiffs have pleaded fraud with sufficient particularity to satisfy Fed.R.Civ.P. 9(b), defendant Pratt's motion for summary judgment is denied as against plaintiffs Hibjay, Barker and Cheney.

### B. *Summary Judgment Against Kelly Lumber*

Defendant also moves for summary judgment against plaintiff Kelly Lumber, arguing that judgment should be granted dismissing Kelly Lumber's civil RICO claim against him because plaintiffs' second amended complaint does not contain allegations sufficient to raise a civil RICO claim by Kelly Lumber against defendant.[4] *See* Defendant Pratt's Memorandum of Law, Doc. 98, at 22. In particular, defendant asserts that the complaint does not allege that any misrepresentations were made directly to Kelly Lumber, and argues that mere allegations that defendant made misrepresentations concerning the Bank's alleged promise to cooperate in Kelly Lumber's financial recovery are insufficient to sustain a RICO claim. Defendant also argues that Kelly Lumber should be estopped from bringing this cause of action based on its failure to timely pursue its claim, because Kelly Lumber was fully aware as of March 1984 that the Bank was not going to cooperate in its financial recovery. Defendant argues that when Kelly Lumber filed for bankruptcy, it not only had the right and opportunity to make allegations of fraud, it had a duty to disclose this claim, and its failure to do so constitutes a waiver of the current claim against defendant. Finally, de-fendant argues that Kelly Lumber failed to plead fraud with particularity.

In order to state a cognizable claim under 18 U.S.C. § 1964, plaintiffs must show that a violation by defendant of 18 U.S.C. § 1962 proximately caused injury to Kelly Lumber. *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 23 (2d Cir.1990). The court ruled in *Kovian II* that Kelly Lumber had sufficiently pleaded a violation of 18 U.S.C. § 1962. *See Kovian II*, Doc. 59, at 30–51. Kelly Lumber further has sufficiently pleaded economic injury proximately caused by defendants' RICO activity. *See* Second Amended Complaint, Doc. 41, at ¶ 250. The affidavits of plaintiffs Barker and Cheney, which describe the impact on Kelly Lumber of defendants' alleged fraudulently statements, themselves are sufficient to raise a genuine issue of material fact concerning causation. Barker Affidavit, Exh. 1 attached to Doc. 105, at ¶¶ 29–35; Cheney Affidavit, Exh. 2 attached to Doc. 105, at ¶¶ 29–35. Because Kelly Lumber has raised a genuine issue of material fact with regard to all elements of its civil RICO claim against defendant, defendant Pratt's motion for summary judgment against Kelly Lumber is denied to the extent it is based upon the sufficiency of the complaint.

Defendant further argues that Kelly Lumber should be estopped from bringing its suit. Because Kelly Lumber knew in March 1984 that the defendant would not participate in any recovery plan, defendant asserts, Kelly Lumber should have sued defendant for fraud prior to the commencement of the instant action, and also should have listed a possible fraud claim against defendant as a bankruptcy estate asset.

■ Defendant Pratt's estoppel argument is unpersuasive. The court has already ruled that a genuine question of fact exists concerning when plaintiffs discovered they had a claim against defendants. Because the length of time that Kelly Lumber waited before pursuing its RICO claim is a question of fact for a jury, as is the question of whether Kelly Lumber knew of its potential

---

4. Defendant originally also argued that Kelly Lumber lacked standing because it was proceeding without the consent of its trustee in bank-ruptcy. Defendant has subsequently abandoned this argument. *See* Defendant Pratt's Reply Memorandum of Law, Doc. 108, at 13.

for such a claim at the time of its action in bankruptcy, Kelly Lumber can not be said to have waived its claim as a matter of law. Therefore, in so far as defendant Pratt's motion for summary judgment against Kelly Lumber is based upon his estoppel argument, the motion is denied.

Finally, defendant Pratt argues that plaintiff Kelly Lumber fails to plead fraud with particularity. As discussed above, this issue was previously decided in favor of plaintiffs, and will not be addressed anew by the court at this juncture.

Because plaintiff Kelly Lumber has pleaded with particularity a claim upon which relief may be granted under 18 U.S.C. § 1964, and questions of fact preclude the court from granting defendant's motion based upon a theory of estoppel, defendant Pratt's motion for summary judgment against Kelly Lumber is denied.

### C. Plaintiffs' Rule 11 Motions

Plaintiffs move for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure based on two arguments made by defendant Pratt in his papers.

■ First, plaintiffs argue that defendant Pratt's contention that Kelly Lumber lacks standing to pursue a RICO claim against defendant because it lacks the consent of its trustee in bankruptcy is "patently frivolous," and reveals a lack of reasonable inquiry by Attorney Matthews. Plaintiffs' Memorandum of Law in Opposition to Summary Judgment, Doc. 107, at 44. The court disagrees. Defendant Pratt candidly admits in his Reply Memorandum of Law, Doc. 108, at 10, that he was mistaken in believing that the trustee in bankruptcy for Kelly Lumber had not consented to the instant RICO claim. Defendant further submits an affidavit by Robert Melillo, Jr., a clerk in Attorney Matthews' office who affirms that Melillo contacted the Bankruptcy Court and was given erroneous information. See Melillo Affidavit, attached to Defendant Pratt's Reply Memorandum of Law, Doc. 108, at ¶¶ 3–4. Because the court finds credible this explanation for defendant's misguided argument, the court holds that Attorney Matthews made reason-

able inquiry into Kelly Lumber's standing to sue.

■ Second, plaintiffs argue that defendant should be sanctioned for arguing contrary to the law of the case established in *Kovian II,* that the plaintiffs pleaded fraud with sufficient particularity. In response defendant argues that General Order # 34 of the Northern District of New York, which requires a RICO complainant to complete a RICO statement in conjunction with its complaint, justifies defendant's argument that the complaint failed to plead fraud with particularity. Defendant further asserts that the court's previous conclusion was erroneous and based upon an incomplete analysis that ignored relevant factors.

The court is not persuaded by either of Attorney Matthews' rationales. General Order # 34 was signed by then-Chief Judge McCurn on November 29, 1992, and therefore has no bearing on proceedings in 1990 which resulted in *Kovian II.* Further, it is well established under the doctrine of the law of the case that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *DiLaura v. Power Authority of State of New York,* 982 F.2d 73, 76 (2d Cir.1992) (quotations and citations omitted). The doctrine is discretionary, and does not limit the court's power to reconsider its own decisions prior to final judgment. *Id.* at 76. Indeed, this district provides a mechanism for parties to request reconsideration of rulings under certain circumstances. Local Rule 10(m) allows parties to move for reconsideration of an order within 10 days of its entry. However, in the instant case defendant's present argument regarding the particularity of plaintiffs' pleading was filed over two and one-half years after entry of *Kovian II.*

Nonetheless, the court declines in this instance to impose sanctions. Because the record is devoid of evidence that Attorney Matthews raised his arguments in bad faith or for an improper purpose, the court finds that the central goal of Rule 11, namely to deter baseless filings, will not be forwarded by the imposition of sanctions. *See Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 393, 110 S.Ct.

2447, 2454, 110 L.Ed.2d 359 (1990). Therefore, plaintiffs' motion for sanctions pursuant to Fed.R.Civ.P. 11 is denied.

## CONCLUSION

In sum, defendant Pratt's motion for summary judgment dismissing the claims against him by plaintiffs Hibjay, Barker and Cheney is denied. Defendant Pratt's motion for summary judgment is also denied with respect to the claims of plaintiff Kelly Lumber. Plaintiffs' motion for sanctions pursuant to Federal Rule of Civil Procedure 11 is denied. No costs or attorney's fees shall be awarded on any of these motions. The parties are directed to continue preparation for trial.

It is So Ordered.